[Crim. No. 1998. First Appellate District, Division One.—March 29, 1938.]

In the Matter of the Application of BOB JANG for a Writ of Habeas Corpus.

Anthony Y. Seto for Petitioner.

Matthew Brady, District Attorney, Joseph A. Garry, Assistant District Attorney, and Raymond D. Williamson, for Respondent.

KNIGHT, J.—Petitioner by this proceeding in *habeas corpus* seeks to be released from the custody of the sheriff, after having been held to answer for trial in the superior court on a charge of having given a bribe to Marshall Burnett, an inspector of the state narcotic division. Shortly before the alleged illegal transaction took place Burnett and Inspector Armstrong arrested one Quon Choy for illegal sale of narcotics; and the substance of the charge set forth in the complaint filed against petitioner is that Burnett was about to be called as a witness in the Quon Choy case and that petitioner gave him a bribe of $400 "upon the understanding and agreement that the testimony of said witness should be influenced". The ground urged in support of the petition for discharge is that the evidence taken at the preliminary examination fails as a matter of law to establish any such understanding or agreement.

Preliminarily, it may be stated that there are several Penal Code sections denouncing as a crime the giving of bribes, among them being sections 67, 67½ and 137. The first two are embraced in title V, part 1, entitled "Crimes by and against the executive power of the state". Those sections provide generally that every person who gives or offers any bribe to any executive officer of the state or any ministerial officer, employee or appointee of the state, county or city therein or political subdivision thereof with intent to influence him in respect to any act, decision, vote, opinion or other proceeding is guilty of a crime. The third section above referred to, number 137, is made part of chapter VI, title VII, part 1, of said code, which is headed "Falsifying evidence"; and the complaint herein was based on the first clause thereof which is as follows: "Every person who gives

or offers, or promises to give, to any witness, or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced . . . is guilty of a felony."

As will be noted, the essential element of the offense thus defined is that the bribe be given upon the *"understanding and agreement* that the testimony of such witness shall be thereby influenced". (Italics ours.) But as contended by petitioner, the evidence taken at the preliminary examination, which consisted alone of the testimony given by Burnett, fails to establish that element of the crime. On the contrary, it would seem that the testimony of the witness directly negatives the existence of any such understanding or agreement.

Summarized, the facts disclosed thereby are as follows: A few days after the arrest of Quon Choy, petitioner called at the office of the state narcotic division in San Francisco, and inquired for the officers who had made the arrest. Being referred to Inspectors Burnett and Armstrong, who were there present, he stated he would like to talk with them somewhere away from the office; and they made an appointment to meet him the next day at the post office building. At that time petitioner informed them that his home was in Bakersfield, where he operated a restaurant; that he knew Quon Choy only casually, but was well acquainted with his wife and two sons, the latter having worked for him at his restaurant during the summer vacations; that Quon Choy was good to his family, but that his wife had been sick and that he had encountered misfortune in other respects; that Quon Choy's wife had written him following her husband's arrest asking if he could send her some money, and that in response to the letter he came to San Francisco to see what he could do; that petitioner then asked them if they really thought Quon Choy was guilty, and if there was anything he could do to help him. They told him the only thing he could do was to induce Quon Choy to reveal the source of the supply of narcotics he had been selling, stating that if he could get any information from Quon Choy regarding the larger peddlers and was instrumental in causing the apprehension of these peddlers they "would tell it to the Judge when Quon Choy was held before the superior court for sentence". Petitioner replied that he did not know much about it but he would see what he could do. The following day they met petitioner

again by appointment, but nothing important transpired, more than that petitioner asked them "to help out Quon Choy". The next day, Saturday, they met petitioner by appointment in front of the customs house. This time they were accompanied by another inspector; also by the chief of the narcotic division, and a customs inspector, and during the conversation petitioner stated that if they "would help out Quon Choy"—"make things easy" for him, he "would take care of them"; that he could get about four or five hundred dollars, saying in this respect that if he paid the money he "would like to see him (Quon Choy) get a suspended sentence, even if it was five or ten years", that "it didn't matter—a five or ten year suspended sentence was all right". The inspectors again told him, however, that they could do nothing for Quon Choy unless he revealed the identity of other narcotic peddlers. The following Monday noon Inspectors Burnett and Armstrong again conferred with petitioner in front of the customs building, and after some preliminary conversation petitioner stated that if they would "make things easy for Quon Choy" he had the money with him. They asked how much he had, and he replied four hundred dollars; whereupon Inspector Burnett took the money and after counting it placed petitioner under arrest.

It has been held in effect that the use of the words "agreement" or "understanding" in statutory provisions denouncing bribery as a crime necessarily carries with it the essential concept of a corrupt bargain (*People* v. *Weitzel,* 201 Cal. 116 [255 Pac. 792, 52 A. L. R. 811]), and as said in the decision in the case just cited, there can be no agreement or understanding without a meeting of minds—a person cannot agree with himself. ▮▮ ˙ And here the transcript of Burnett's testimony shows affirmatively and without conflict that neither he nor any other person connected with the narcotic division ever agreed to do anything in return for the payment of the money, or that there was ever any understanding that they would do anything. His testimony in this regard was as follows: "Q. Did you tell him in return as to what you could do? A. No. Q. You didn't tell him what you were going to do if he paid that money over? A. No. Q. Didn't Mr. Armstrong tell him what he was going to do for him? A. No. Q. Didn't Mr. Armstrong or you say to him that you

thought you could get probation for him? A. No. He said . . . if he gave us the money he would like to see this man get a suspended sentence, even if it was five or ten years. Q. In other words, he would like to see the defendant Quon Choy get a suspended sentence of five or ten years? A. Yes, he said it didn't matter—a five or ten year suspended sentence was all right.'' Furthermore, the witness stated that at no time did the petitioner asked them to have the charge against Quon Choy dismissed, nor did he ask either of them to withhold any evidence or to perjure themselves. As will be noted from the foregoing, there never was any meeting of minds, and hence no understanding or agreement, such as required by section 137.

Respondent stresses the request made by petitioner that the inspectors make it easy for Quon Choy, but manifestly as shown by the context of Burnett's entire testimony, such request referred to the matter of securing a suspended sentence or some light punishment for Quon Choy. In any event, according to Burnett's testimony, there was never any acquiescence in such request, and consequently no understanding or agreement with respect thereto.

In order that our decision herein may not be misunderstood, it may be well to state that it is doubtless the law that the guilt of a person accused of bribery under section 137 does not depend upon the intention of the witness to carry out the understanding or agreement to falsify his testimony. (*People* v. *Schultz*, 18 Cal. App. (2d) 485 [64 Pac. (2d) 440].) But clearly, such rule does not do away with the burden of establishing, as required by the plain provisions of said section, that the bribe was given upon such understanding and agreement. In this particular the requirements of section 137 are entirely different from those of sections 67 and 67½ relating to the giving of bribes to executive or ministerial officers, etc., to influence their actions as such. Where the charge is based on either of those sections it is necessary to prove only that the bribe was given with the intent to influence the actions of such officer, etc.

Nor are we to be understood as holding that the transaction in question did not constitute bribery under either section 67 or section 67½, and that petitioner may not be prosecuted accordingly. We are dealing here only with section 137; and since the evidence fails as a matter of law to establish the

essential elements of the bribery defined thereby, petitioner is entitled, in so far as any alleged violation of that section is concerned, to his discharge; and it is so ordered.

Tyler, P. J., and Cashin, J., concurred.