THE PEOPLE, Respondent, v. FRANK BRIGHAM, Appellant.

Samuel A. Rosenthal for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

DORAN, J.—This is an appeal from the judgment following a verdict of guilty.

Defendant was charged by information with the violation of section 68 of the Penal Code. The information alleged the offense substantially in the language of the statute. The evidence established that defendant was employed by the California Department of Motor Vehicles as Drivers' License Examiner at Los Angeles; that, as such employee, defendant assisted applicants for drivers' licenses and, in particular,

illiterate applicants; that, in this connection, illiterates "took the same tests as any other applicant, with the exception that they were given an oral test on the traffic laws, inasmuch as they were unable to read, and this examiner had that job of giving them the oral test"; "that the oral test was to be followed by a driving examination"; that the examiner determined whether the applicant was qualified to receive a driver's license; that, if qualified, the examiner issued the license for which, in the case of an original license, there was no charge or fee. The evidence further reveals that Dock Berry applied for a driver's license, was given the oral examination by defendant, was given a book to study, and "sent home"; that, quoting from appellant's brief, "he returned on November 20th and saw defendant in a little office and was seated in a corner until defendant came and got him and proceeded to give him the oral reexamination. After the oral examination he took an eye test, which he passed all right. Defendant then got the license and told him to get his car for a driving test. His wife was in the car but defendant told him that she could not ride on the test, so she got out before defendant got in and they went for the driving test. After driving, in the next block from the Motor Vehicle Department defendant told him to 'draw to the curb and stop' and then asked him what the license was worth to him and he replied 'a lot' because he had 'just paid a ticket' for not having one. That defendant told him he would let him have this license for $10.00. Witness told defendant he didn't have $10.00, but would go back to his wife and see what she had. Defendant then told him to drive around on the next block when he got out and told him to come back around three. He then drove around and picked up his wife, who gave him $5.00 and drove back where he left defendant and gave him the $5.00 telling defendant that he would bring him the other five the next evening; that defendant told him 'You be god damn sure you bring it' and gave him a little piece of paper and gave him the license. That same evening he drove down Central Avenue until he saw the highway patrolmen, showed them the license, and then went home. The next morning the policemen came to his home. He went with them to Newton Street Police Station and they gave him five $1.00 bills. He went back to the Motor Vehicle Department and found defendant in his office with a colored man, and waited for the colored man to go out. Defendant

went out and told him to wait. When defendant came back Berry told him he had brought him the money and he gave him the five one dollar bills.'' Berry was corroborated in part by Mrs. Berry.

Officer Griffin, an officer from the attorney general's office supplied Berry with the five one dollar bills, was present and witnessed Berry enter defendant's office and entered the office himself as Berry left. Officer Griffin testified, quoting the reporter's transcript of the evidence as given at the trial, ''at that moment I noticed that Police Officer Elser was at my right side. He went into the office, there was a desk or two desks—I think there's two desks in there—and he stood at the first one, and I said, 'I want that five dollars that man gave you.'

''He said, 'Nobody gave me five dollars.'

''I said, 'Put your property on the desk.'

''With his left hand he reached into his left hand trousers pocket and he put down a folded up wad of currency, and there were, I believe, two scattered other bills that were wadded up, and a small amount of silver, possibly a dollar in silver. I picked up the five—correction—I picked up the wad of bills and I said, 'I know these bills. I can identify every one of them.' I spread them flat, and the top one was a one dollar bill.

''Mr. Elser said, 'One of those bills has the large word ''Hawaii'' printed on it.'

''I spread the bills out and counted them. There were five of them. They were all one dollar bills. One of them, I think the second or third one, had the printing of 'Hawaii' on it. And I said to Mr. Brigham, 'These are the bills that man gave you.' ''

The defendant testified in substance that the five dollars was a present and, on cross-examination, described its delivery as follows:

''Q. All right. Now, after Mr. Berry left you that day you saw him the following day, didn't you? A. Yes, sir.

''Q. In your office? A. Yes, sir.

''Q. When you saw him there did he speak to you first or did you speak to him? A. He spoke to me.

''Q. What did he say to you? A. He said, 'You thought I had forgotten you, didn't you? Well, I haven't. Here is something for you.'

"Q. What did you say? A. There wasn't much for me to say.

"Q. What did you say? A. I don't think I said anything.

"Q. Didn't you even say, 'Thank you'? A. I didn't have much of an opportunity, Mr. Crail. He shoved his hand out, like this. It is instinctive for you to open yours. And he dropped the folded money in my hand and he was out of the door like a shot."

It is contended by appellant that the court erred in refusing to instruct the jury on the subject of accomplice. A number of defendant's instructions on this subject were refused and in that connection it is argued by appellant that "the people included in the charge, and the information is predicated upon the theory *that there was an 'agreement' between appellant and Dock Berry that,* in consideration of the money given by Berry to appellant, appellant's 'action' on the application would be influenced favorably to Berry" (italics included). It is further argued that by including the "element" of agreement in the offense, instructions on the subject of accomplice were necessary.

Dock Berry testified, referring to the defendant and to the incident in question, "He asked me what was the license worth to me, and I told him, I says, 'I don't know.' I said, 'It's worth a whole lot to me because I just paid a ticket because I didn't have mine'. And he told me, he says, 'Well, I will let you have this license for $10.00'." The evidence reveals that Berry then drove around the block to where he had left his wife and got $5.00 from her, which was all she had, returned, and gave the $5.00 to defendant, assuring defendant that the other $5.00 would be paid the next day, whereupon, defendant stated, "be damned sure you bring it." Thus it will be seen that, by the language used, the defendant not only *asked* for a bribe, but implied that if the money was not forthcoming there would be no license. The evidence falls far short of establishing or even suggesting the so-called *agreement* contended for by appellant. But, appellant's argument, in effect, goes further; it assumes that, in order to complete the offense defined by section 68 of the Penal Code, there must be proof of an *"agreement."* And, that an *agreement* of necessity would constitute Berry the accomplice of the defendant. *People* v. *Davis,* 210 Cal. 540 [293 P. 32], and *In re Jang,* 25 Cal.App.2d 529 [78 P.2d 250], are cited

in support of this contention. The Davis case is not analogous. The Jang case concerns section 137 of the Penal Code which provides that "Every person who gives or offers, or promises to give, to any witness, or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced . . . is guilty of a felony." The court held in effect that the offense was not complete with the mere gift, offer or promise to give, but that the state of mind of the "witness" was also an element of the offense. In other words, the individual to whom the offer is made, must acquiesce in order to complete the offense. The difference between the language of sections 137 and 67 of the Penal Code is noteworthy. ■ The latter section reads in part as follows, "Every person who gives or offers any bribe to any executive officer of this state, with intent to influence him. . . ." Thus, the mere offer, with the corrupt intent referred to completes the offense. From the standpoint of construction and interpretation, to compare section 68 with section 137 would serve no purpose. There is no resemblance between the subjects respectively of the two sections, nor is there any possible relation between them. On the contrary, a comparison of section 68 with section 67 is an aid to the construction of section 68. In adopting sections 67 and 68 the Legislature obviously was concerned primarily with the bribery of executive officers. Although section 68 includes other public employees, the analogy remains. Section 67 is concerned with the offense of giving or offering of a bribe to an executive officer with intent to influence "him" etc., and is complete when the gift or offer is made with corrupt intent as therein provided. No act or intention on the part of the executive officer is necessary to complete the offense. Only the state of mind of the giver of the bribe is involved. In such circumstances, the "executive officer" is in no sense an aider or abettor and therefore is neither a principal nor an accomplice.

■ Section 68 of the Penal Code, the violation of which appellant was adjudged guilty, is concerned with the bribe seeking executive or ministerial officer, employee of the state, county or city, etc. There is nothing in the language, when analyzed, to suggest any intention to include the victim as an offender. Here the culprit is the bribe seeker. And, the crime is complete when the individual described in the section "asks, receives, or agrees to receive any bribe." No action

on the part of the victim, such as payment, delivery or otherwise, is necessary to complete the offense. ▆ Appellant adopts a meaning for the words "agrees," "agreement" and "understanding," as used in the statute, that lends plausibility to the argument relied on and, if such meaning expressed the intention of the Legislature, appellant's contention would have to be upheld. But, the provisions of section 68 are not that complicated. The word "agree" has several meanings, one of which is to *promise*, another to *consent*, and, it is quite apparent that, in order to effect the obvious intent of the section, such meanings must be applied. Thus, every executive officer who asks, receives or *consents* to receive etc., upon any *promise* or understanding etc., commits the offense contemplated by the statute. And, as pointed out in *People* v. *Kerns*, 9 Cal.App.2d 72, at 75 [48 P.2d 750], "it is not necessary that there be an understanding, in the sense of an agreement, with the person unlawfully approached but merely an understanding on the part of the bribe seeker himself that his official action shall be influenced." The "agreement or understanding" as used in section 68 is not to be confused with the same words when used in connection with the valid and uncontaminated agreements incident to honest and honorable transactions. In other words, the "agreement or understanding" refers only to "his," the bribe seeker's state of mind, and not the victim's. ▆ It may be conceivable that in some situations, under the provisions of either sections 67 or 68, the bribe seeker could be the accomplice of the bribe giver or vice versa but, by reason of the evidence in the within action, no such problem is presented. The crime was complete when defendant, in substance and effect, sought the bribe. There is nothing in the evidence to suggest that Dock Berry aided or abetted the defendant in seeking the bribe. Dock Berry, therefore, was not an accomplice; hence the instructions on that subject were properly refused.

▆ It is also urged by appellant that the court's failure to give certain requested instructions on the subject of intent, was error. It is sufficient to note that other instructions adequately included the same subject; hence, no error resulted.

▆ Finally, appellant contends that the court erred in its announced conclusion that defendant, was not eligible for probation because of the provisions of section 1203 of the Penal Code. But the trial court stated further, "There is no

doubt in the Court's mind that this defendant, Mr. Rosenthal, comes squarely within the provisions of section 1203 which prohibit probation, and the Court's hands are necessarily tied in that matter. For that reason, therefore, and for other reasons, the application for probation is necessarily denied.'' There appears to be no legal or logical reason for disagreement with the trial court's application of section 1203, but, in any event, inasmuch as other reasons were also relied on, appellant's contentions with reference to probation are untenable.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1946. Carter, J., and Schauer, J., voted for a hearing.