[Civ. No. 19109. Second Dist., Div. Three. Oct. 1, 1952.]

ARTHUR C. SCHAEFER, Petitioner, v. SUPERIOR COURT OF THE COUNTY OF SANTA BARBARA, Respondent.

Edward J. Trevey for Petitioner.

Vern B. Thomas, District Attorney, Frank J. McCarthy and Albert W. Meloling, Deputy District Attorneys, for Respondent.

WOOD (Parker), J.—Proceeding in prohibition. Petitioner seeks to restrain the superior court from pronouncing sentence until it has considered and acted upon petitioner's application for probation. The trial judge was of the opinion that

petitioner was a public official within the meaning of the probation statute and was not eligible for probation.

It was alleged in the petition that: On and for several years prior to March 28, 1952, petitioner was an employee of the Department of Employment, State of California, under civil service in the capacity of auditor in charge of the Santa Barbara Audit District Office of said department. On March 27, 1952, petitioner was charged with embezzlement in eight counts. On March 28, 1952, petitioner pleaded guilty to counts 1, 2 and 3. The other counts were dismissed. On April 7, 1952, the respondent court ordered the probation officer to make a presentence investigation. On April 21, 1952, the petitioner made a motion for probation upon the ground that, under the provisions of section 1203 of the Penal Code, petitioner was not a public official or a peace officer and was therefore eligible to apply for probation. The court granted permission to apply for probation, and it directed the probation officer to make a report concerning petitioner's eligibility for probation. On May 5th the officer submitted a report which contained the recommendation "that probation be granted in this case subject to the usual terms and conditions including those outlined above." On said May 5th the court expressed the opinion that petitioner was not eligible for probation and made the following statement: "In this case of the *People* v. *Arthur Christopher Schaefer*, I should like to entertain the application for probation, but I believe that under the law, particularly under *People* v. *Hess*, 104 Cal. App.2d 642 [234 P.2d 65], and *People* v. *Hess*, 107 Cal.App. 2d 407 [237 P.2d 568], I am not permitted to do so, and when this matter is called for hearing on May 12th, 1952, at 11 a. m., I shall deny the application for probation and proceed to sentence the defendant. That is all." It was alleged further that petitioner has no plain, speedy or adequate remedy at law, in that, unless the respondent court is restrained, petitioner will be sentenced to a term of imprisonment in the penitentiary before determination of his eligibility for probation can be had.

In the answer of respondent, signed by the district attorney, it was denied that petitioner was an employee of the Department of Employment; and that petitioner has no plain, speedy or adequate remedy at law. In said answer it was alleged that petitioner was a public official within the meaning of section 1203 of the Penal Code; that he had the remedy of an appeal from the judgment which may be pronounced by the

respondent court; that said court, in passing upon the application for probation and in imposing sentence, is acting within the jurisdiction conferred upon it by article VI, section 5, of the Constitution; that the petition did not state facts sufficient to constitute a cause for the relief prayed for; and that by petitioner's plea of guilty he admitted that he was a public officer.

In the counts to which he pleaded guilty it was alleged that embezzlement, a felony, was committed by petitioner, who was then "an officer of the State of California Department of Employment, to wit, the duly appointed and qualified Auditor in Charge of the Santa Barbara Audit District Office of said Department," and who was as such officer entrusted by law with the duty of safekeeping and transferring public moneys collected on behalf of the state; that by virtue of said duty there came into his possession a certain stated sum of public money which he embezzled and appropriated to his own use. (The sums stated in the respective three counts were $35.02, $15.53, and $19.91.)

Section 1203 of the Penal Code (in effect when the offense was committed) provides in part that "Probation shall not be granted to . . . any *public official* or *peace officer* of the State, county, city, city and county, or other political subdivision who, in the discharge of the duties of his public office or employment . . . embezzled public money. . . ." (Italics added.) The provision that probation should not be granted to any *public official* or *peace officer* has been in said section since the section was amended in 1931. Prior to that amendment, the section provided that: ". . . probation shall not be granted . . . to any public official or *employee* of the state, county, city, . . . who in the discharge of the duties of his public office or employment . . . embezzles public money . . . " (Italics added.) (Stats. 1929, p. 1385.) It thus appears that by the amendment in 1931 the word "employee" was omitted from said section 1203, and the words "peace officer" were substituted in lieu thereof. In other words, before the 1931 amendment an employee of the state was not eligible for probation, but after the amendment such an employee was eligible therefor. Before and after the amendment, a public official was not eligible for probation.

Petitioner contends that he was not a public official or a peace officer; that he was an employee and is eligible for probation. Respondent contends that petitioner was a public

official of the state by reason of the duties, rights and obligations of his employment; and that he is not eligible for probation.

In *People ex rel. Chapman* v. *Rapsey,* 16 Cal.2d 636 [107 P.2d 388], it was said at page 639: " 'The words "public office" are used in so many senses that the courts have affirmed that it is hardly possible to undertake a precise definition which will adequately and effectively cover every situation. Definitions and application of this phrase depend, not upon how the particular office in question may be designated nor upon what a statute may name it, but upon the power granted and wielded, the duties and functions performed, and other circumstances which manifest the nature of the position and mark its character, irrespective of any formal designation. But so far as definition has been attempted, a public office is said to be the right, authority, and duty, created and conferred by law—the tenure of which is not transient, occasional, or incidental—by which for a given period an individual is invested with power to perform a public function for public benefit. . . . One of the prime requisites is that the office be created by the Constitution or authorized by some statute. And it is essential that the incumbent be clothed with a part of the sovereignty of the state to be exercised in the interest of the public.' " In *Parker* v. *Riley,* 18 Cal.2d 83 [113 P.2d 873, 134 A.L.R. 1405], it was said at page 87: "[I]t is generally said that an office or trust requires the vesting in an individual of a portion of the sovereign powers of the state." Sovereignty is defined in Webster's Dictionary as: "The supreme political power, authority, or status of the person or persons in a state whom the citizens as a body habitually obey; the power that determines and administers the government of a state in the final analysis." In *State ex rel. Pickett* v. *Truman,* 333 Mo. 1018 [64 S.W.2d 105, 106] it was said, at page 1022, in referring to *State ex rel. Landis* v. *Board of Commissioners,* 95 Ohio 157 [115 N.E. 919]: "Illustrative of what is meant by 'sovereignty of the State,' in the same opinion it is said: 'If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with power to incur financial obligations upon the part of the county or State, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter

must necessarily act through an official agency, then such functions are a part of the sovereignty of the State.' '' In *Patton* v. *Board of Health,* 127 Cal. 388 [59 P. 702, 78 Am.St. Rep. 66], it was held that, under a statute requiring the appointment of six health inspectors, such an inspector was an officer. It was said therein at page 398: "It seems to be reasonably well settled that where the legislature creates the position, prescribes the duties, and fixes the compensation, and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office and he who occupies it is an officer. In such a case, there is an unmistakable declaration by the legislature that some portion, great or small, of the sovereign functions of government are to be exercised for the benefit of the public, and the legislature has decided for itself that the employment is of sufficient dignity and importance to be deemed to be an office. It is only where the legislature has delegated its power to create the office and to prescribe the duties and compensation, that differences of opinion have arisen in the courts."

The Department of Employment has a director. The department has five divisions with a chief in charge of each division. One of the divisions is the division of accounts and tax collections. That division has three sections, one of which is the auditing section at Sacramento and is known as the central auditing office. A principal auditor at the central office is in charge of the auditing section and is responsible to the chief of the division of accounts and tax collections. (The chief of that division is also the deputy director of the department.) There are four area audit offices in the state, each of which is in charge of an area supervising auditor. One of those area offices is at Los Angeles. There are nine district audit offices in the Los Angeles area, one of which offices is at Santa Barbara, and it is the office for the district known as Santa Barbara County. (There are 37 district audit offices in the state.)

In 1947 petitioner was appointed office manager and auditor in charge of the Santa Barbara district audit office, and he subscribed the oath of office and furnished surety bond. His payroll and civil service classification was Auditor II and his gross salary was $412 a month. The personnel of that district office consisted of the petitioner, a typist clerk, and a part-time auditor.

It is the function of the central office to review field audit reports, review and take action on unpaid accounts, levy assessments, make adjustments on employers' accounts, issue rulings on questions of coverage, make assignments to field auditors and make investigations where correspondence is not feasible.

It is the function of the area offices to exercise administrative and functional supervision of district offices and maintain liaison between the central and district offices.

It is the general function of the district offices to determine by investigation and audit the wages paid and the resulting liabilities of employers, collect amounts due, register subject employers, provide related advisory services and promote and obtain compliance with relevant requirements of the act.

It is the specific duty of the district offices to make field audits or investigations of employers' financial records to determine tax liability; make reports of audits and investigations, including (1) proposed assessment or refund, (2) the initial determination as to correct legal entity and as to merit rate eligibility, and (3) comments upon other matters necessary to establish employers' liability under the Unemployment Insurance Act; investigate all obstructed claims, referred to them by the central office, to establish correct status and wage credits of claimant; make field audit or investigation of employer records to determine if disability insurance plans are correctly maintained; originate field audits or investigations of employing units, where a need is indicated by complaints of workers or by information from other sources; obtain delinquent reports from employers who have not complied with written demands from the central office; collect delinquent accounts; interview tax debtor to arrange for payment in full or in installments; file notices to withhold; determine tax debtors' assets; and levy thereon when necessary to protect the department's interest; prepare and file criminal complaints against employers who are not complying with the act, when the district office has determined the advisability of such action and received approval of the central office; assist the prosecutor in presentation of such cases; prepare and present the department's case in tax hearings, including examination of the petitioner and his witnesses; and take any action necessary to obtain compliance with the Unemployment Insurance Act.

The Unemployment Insurance Act was enacted in 1935. Under the provisions of the act (§ 83) the California Employ-

ment Stabilization Commission, consisting of five members, was created. The members of the commission are the three members of the appeals board, the chief of the division of the public employment offices and benefits payments, and the chief of the division of accounts and tax collections. The members of the commission are appointed by the governor, subject to the approval of the Senate, and the salary of each member is $12,000 per year. (§§ 76 and 77.) The Department of Employment was created by said act, and the provisions of the act are administered by an executive officer known as the director of employment. (§ 75.) The director is appointed by the governor, subject to approval of the Senate, from the membership of the commission. The director acts as chairman of the commission.

The act also provides that the director shall appoint such assistants as he may find necessary for the administration of the act and he may delegate to any of the officers or employees of the department such powers and duties as he may consider necessary. It thus appears that the position which was held by the defendant herein was not expressly mentioned by the Legislature as a position to be created under the act, but the position was created by the director under a general power delegated to him by the Legislature. Defendant was selected from a state civil service classification known as Auditor II. He was in charge of one of 37 district audit offices. He was under the immediate supervision of the Los Angeles area supervising auditor. The area supervising auditor was under the immediate supervision of the principal auditor in the central office at Sacramento. The principal auditor was under the immediate supervision of the chief of the division of accounts and tax collections. The chief of the division was the deputy director of the department and under the immediate supervision of the director. Therefore, defendant's position was subordinate to four other positions within the Department of Employment. He was not a deputy director, a deputy chief, or a deputy auditor. He was not authorized to act in the name of the director, or the chief, or the principal or supervising auditor. His duties consisted principally of routine investigations, audits, reports, ordinary clerical work, and making recommendations to the supervising and central offices. It does appear that, in addition thereto, he had the duty of filing criminal complaints against employers, provided that he had first obtained the approval of

the central office. In other words, his duties were limited to usual and ordinary investigations, audits, and clerical matters, except in certain additional matters where he was required to obtain the approval of his superiors. The state budget for the fiscal year 1951-52 shows that in the field offices of the Department of Employment there were 98 positions with the same civil service classification as that of defendant, namely, Auditor, grade 2. The position occupied by defendant lacked elements which, as hereinabove stated, are usually associated with a "public office." His position did not measure up to so high a standard. He was not required, or authorized, to exercise a part of the sovereign power of the state. (See *Parker* v. *Riley, supra,* 16 Cal.2d 83, 87 ; *Spreckels* v. *Graham,* 194 Cal. 516, 528 [228 P. 1040].) He was not authorized, without approval of his supervisors, to exercise any legal power that would bind third persons or the people of the state. In the case of *Cleland* v. *Superior Court,* 52 Cal.App.2d 530 [120 P.2d 622], it was held that the defendant therein, who had been appointed by the supervisors as superintendent of the Mendocino County Farm and Hospital, was not a county "officer" but was an employee.

The fact that defendant subscribed the oath of office and gave a bond is a matter to be considered in determining the character of the position held by him, but that fact is not determinative of the question. In *Patton* v. *Board of Health,* 127 Cal. 388 [59 P. 702, 78 Am.St.Rep. 66], it was said at page 395 : " [I]t has been held that an oath of office is not a necessary criterion; nor is salary. These are but incidents and form no part of the office, though they may aid in determining the nature of the position." A bond may be required of an officer or an employee. (Gov. Code, § 1480.) The section just cited provides: "Every officer, agent or employee not required by statute to give an official bond may be required to give an individual official bond. . . ."

Probation, of course, is not a right to which a defendant is entitled, but it is an act of grace and clemency which the court, under certain circumstances, may grant. The probation statute, section 1203 of the Penal Code, states that the court, under circumstances specified therein, shall have the power in its discretion to place a defendant on probation, provided, however, that probation shall not be granted to a defendant who committed any of certain specified offenses, or to a defendant who committed any of certain specified offenses under certain circumstances. Under the provision of said

section, designating exceptions to the basic provision that probation may be granted, various offenses and circumstances are enumerated. ■ If a defendant is to be denied permission to apply for probation, upon the ground that the circumstances of his case bring him within an exception to the basic rule that he may apply for probation, it should appear clearly and with certainty that the Legislature intended by an exception to such rule to render him ineligible for probation.

■ By the amendment of the probation statute in 1931 whereby the word "employee" was omitted, the Legislature definitely determined that an *employee* of the state was eligible for probation. The statute, as amended at that time, states that a "public official" is not eligible for probation. The statute does not define the words "public official," and it does not specify the positions which are deemed to be public offices. As stated in *Patton v. Board of Health, supra*, at page 397: "[T]he definitions of the term 'office' [the usual case definitions], while not inaccurate, taken in a general sense, are quite inadequate when applied to particular cases." In considering the meaning of the words "public official" with respect to a public office in which there are many positions, the question arises as to where the line of demarcation is to be drawn between positions occupied by officials and positions occupied by employees who are not officials. ■ In the absence of a controlling statutory definition of the words "public official," and in the absence of an adequate definition otherwise which establishes that a defendant is ineligible for probation, an interpretation should be adopted in doubtful cases which will accord the defendant the right to apply for probation.

■ Whether a person is a "public official" within the meaning of the probation statute, depends upon the circumstances of each particular case, especially the circumstances with reference to the manner in which the position was created, the power granted and exercised, and the duties and functions performed.

■ The defendant herein was not a public official, but was an employee. He is eligible for probation, and is entitled to have his application for probation determined upon its merits.

The cases of *People v. Hess* in 104 Cal.App.2d 642 [234 P.2d 65], and 107 Cal.App.2d 407 [237 P.2d 568], referred to by the trial court, did not determine the question presented here. The question presented therein, with reference to probation, was whether the provision of said section 1203, which pre-

cludes the granting of probation to public officials who embezzle public money, is unconstitutional. It was held that the provision was constitutional.

The case of *People* v. *Brigham,* 72 Cal.App.2d 1 [163 P.2d 891], cited by respondent, is not of assistance in determining the question presented here. The defendant therein, who was an examiner of applicants for automobile drivers' licenses, was convicted of bribery. In denying probation therein, the trial judge said that the defendant was not eligible for probation; and that for that reason *and other reasons* probation was denied. On appeal it was contended that the conclusion that defendant was not eligible for probation was erroneous. The reviewing court said that there was no reason for disagreement with the trial court's application of section 1203, but in any event, since there were other reasons for denying probation, the contention with reference to probation was not tenable. A reference to the reporter's transcript therein indicates that a reason for denying probation was that defendant was then on probation after having pleaded guilty to disturbing the peace.

▉ Respondent asserts that, since petitioner has a plain, speedy and adequate remedy by appeal from the judgment, a writ of prohibition should not issue; that the trial court had jurisdiction of the subject matter and person, and that an erroneous determination of an issue would not deprive the court of jurisdiction so as to furnish a basis for a writ of prohibition. The trial judge stated, as above shown, that he would like to entertain an application for probation, but he believed that under the law he was not permitted to do so; and that when the matter was called for hearing he would deny the application and proceed to sentence the defendant. Since the defendant pleaded guilty there would be no meritorious basis for an appeal from the judgment, except perhaps to review the order denying probation. ▉ There is no appeal from an order denying probation, but where such denial is for lack of jurisdiction the order will be reviewed on appeal from the judgment. (*People* v. *Young,* 105 Cal.App.2d 612, 613 [233 P.2d 155].) ▉ In view of said declaration by the trial court regarding probation, it should not be concluded that an appeal from the judgment would afford defendant a plain, speedy, and adequate remedy. It is not necessary to determine respondent's contention with respect to the propriety of prohibition as a remedy. ▉ It appears that petitioner is entitled to relief under a form of writ different from

the one sought by him. The trial court declined, upon jurisdictional grounds, to consider and determine the application for probation upon its merits. ''The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction and that mandate may be used to compel the performance of this duty. This is so even where the trial court's refusal to pass on the merits is based on the considered but erroneous belief that it has no jurisdiction as a matter of law to grant the relief requested.'' (*Robinson* v. *Superior Court*, 35 Cal.2d 379, 383 [218 P.2d 10].) The petition herein may be regarded as one for a writ of mandate. (*Simmons* v. *Superior Court*, 96 Cal.App.2d 119, 132, 133 [214 P.2d 844, 19 A.L.R.2d 288].)

Let a peremptory writ of mandate issue commanding respondent court to hear and determine petitioner's application for probation upon its merits. The alternative writ of prohibition is discharged.

Shinn, P. J., and Vallée, J., concurred.