[Crim. No. 21983. June 24, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
DEAN RICHARD PIC'L, Defendant and Respondent.

734

**COUNSEL**

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Arnold T. Guminski, Robert N. Jorgensen and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Dean Richard Pic'l, in pro. per., and John M. Polakovic for Defendant and Respondent.

**OPINION**

MOSK, J.—The People appeal an order setting aside three counts of an indictment returned against defendant Dean Richard Pic'l, an attorney, in connection with the alleged bribery of a prospective complaining witness in a criminal prosecution. For the reasons that follow, we hold that the court erred in ruling there was no reasonable cause to charge defendant with the offenses. We therefore reverse the order, reinstating all three counts.

Defendant was charged with six felonies: count I, conspiracy (Pen. Code, § 182); count II, extortion (*id.*, § 520); count III, bribing a witness not to attend trial (*id.*, § 136 1/2); count IV, bribing a witness to withhold testimony (*id.*, § 137); count V, compounding a felony (*id.*, § 153); count VI, receiving stolen property (*id.*, § 496). Defendant moved to set aside the indictment under Penal Code section 995. The motion was granted as to counts III, IV, and V, but denied as to the others. A jury found defendant guilty of the remaining counts, and the judgment of conviction was affirmed on appeal. (*People* v. *Pic'l* (1981) 114 Cal.App.3d 824 [171 Cal.Rptr. 106].)[1]

Evidence was presented to the grand jury that a racing car and related equipment worth $120,000 were stolen from Douglas Kerhulas, a professional drag racer, on July 30, 1978. Since racing provided a significant portion of Kerhulas' income, he placed a $2,000 reward notice in a dragster magazine for information about the theft. On August 3, Randall Martin approached the owner of an auto parts shop in Pasadena and offered to sell a racing car differential, worth $1,000, for $150. The owner became suspicious and notified Kerhulas and the police. When they arrived at the shop, Kerhulas identified the differential as part of his stolen property. Martin was arrested.

Kerhulas contacted Martin after his release on bail and offered to give Martin $3,000 if the remainder of the property was returned. Martin agreed. On August 6, an anonymous caller telephoned Kerhulas and stated that he, together with Martin and others, had stolen Kerhulas' car and equipment. He confirmed the agreement that Kerhulas had made with Martin, but demanded that Kerhulas also sign a pledge not to prosecute. The following day the man called again to tell Kerhulas that he would soon receive final instructions for retrieving his property. Kerhulas then informed sheriff's deputies of the calls, and they attached a tape recorder to his telephone. That evening defendant Pic'l called and reiterated the planned exchange of the stolen property for Kerhulas' cash and promise of nonprosecution, with the exception that the price had been lowered to $2,500. Pic'l and Kerhulas subsequently met at a restaurant, with the police surreptitiously monitoring the conversa-

---

[1] In the indictment, codefendant Randall Martin was charged with the same offenses as Pic'l. The indictment also included a count VII, charging Martin alone with a separate offense of receiving stolen property. After Pic'l's motion, Martin made his own section 995 motion and also succeeded in having counts III, IV, and V set aside. He was convicted on the other four counts and the convictions were affirmed. The People do not appeal from the partial granting of Martin's section 995 motion.

tion by means of a transmitter on Kerhulas' leg. Kerhulas paid defendant the $2,500 and signed the nonprosecution agreement.

The agreement, prepared by defendant, consisted of the following terms:

"I, DOUG KERHULAS, owner of a certain 1977 Chevrolet pickup, bearing California License Number 1E43451, and a special contruction [*sic*] trailer bearing California license number UB7406, as well as a top fuel dragster and miscellaneous parts, all of which were recently taken from my possession, for the purpose of reobtaining their possession, do hereby agree as follows:

"A. I accept from Dean R. Pic'l, Attorney-at-law, that portion of the aforesaid property that he was able to recover.

"B. I hereby release the said Dean R. Pic'l from any and all liabilities which may arise by virtue of his participation in this matter and acknowledge that he has acted solely as an intermediatery [*sic*] for the purpose of resolving this matter.

"C. I agree to seek the dismissal of all criminal charges which may have been filed relative to this matter and to do everything within my power to prevent the filing of any additional charges against any person. I hereby acknowledge full restitution and request the dismissal of all criminal charges pursuant to Penal Code Sections 1377 and 1378. As consideration for the restoration to me of my property, I shall refuse to prosecute criminal charges against anyone, or, in the alternative, shall be fully responsible for damages."

Defendant then led Kerhulas to a house in which the stolen items were stored. The police arrested defendant as he left the premises; he surrendered the nonprosecution pledge to the arresting officer, and the $2,500 in cash was removed from his pocket. When interviewed by the police, he stated that he would not have released Kerhulas' property had Kerhulas not signed the document and paid the $2,500.

When asked to explain to the grand jury the meaning of the phrase "I shall refuse to prosecute" in the agreement he had drafted, defendant testified that in nonmisdemeanor criminal cases the only way a witness can prevent prosecution is to "refuse to testify."

Defendant incorrectly asserts that we are presented with an appeal from the findings of a trier of fact. ■ Rather, in considering a motion to dismiss under Penal Code section 995, the superior court is sitting as a reviewing court (*People* v. *Block* (1971) 6 Cal.3d 239, 245 [103 Cal.Rptr. 281, 499 P.2d 961]), and it is the grand jury that is the factfinder. In a section 995 proceeding, the trial court may set aside the indictment only if the grand jury acted "without reasonable or probable cause." In the course of that determination, "[e]very legitimate inference that may be drawn from the evidence must be drawn in favor of the [indictment]." (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal. Rptr. 304, 479 P.2d 664].) "[A]n indictment will not be set aside if there is some rational ground for assuming the probability that an offense has been committed and the accused is guilty of it; . . ." (*Somers* v. *Superior Court* (1973) 32 Cal.App.3d 961, 963 [108 Cal.Rptr. 630].) This standard must also guide our review of the propriety of the trial court's order dismissing three counts of the indictment herein. We consider those counts in sequence.

## *The Charge of Bribing a Prospective Witness Not to Attend Trial*

Count III of the indictment charged defendant with violating section 136 1/2 of the Penal Code, which provides: "Every person who gives or offers or promises to give to any witness or person about to be called as a witness, any bribe upon any understanding or agreement that such person shall not attend upon any trial or other judicial proceeding, or every person who attempts by means of any offer of a bribe to dissuade any such person from attending upon any trial or other judicial proceeding, is guilty of a felony."

· ■ The first ground announced by the court for setting aside count III was that because Kerhulas was a "feigned cooperator" there could be no "understanding or agreement" that he would not attend trial if called as a witness.[2] In other words, in order for a briber to violate section 136 1/2, there has to be a so-called "meeting of the minds" between the briber and the witness, in which both parties intend to enter into a corrupt bargain. Such an element of the offense could not have been shown by the evidence in the present case because Kerhulas, the prospective witness, never intended to carry out the pledge he signed. As will appear, however, in requiring such a "meeting of the minds" the court erroneously assumed the existence of an element of

---

[2]It is undisputed that defendant's proffer of Kerhulas' property was a bribe.

the offense of bribery that has never been established by decisional law in California.

The Court of Appeal in *People v. Gliksman* (1978) 78 Cal.App.3d 343 [144 Cal.Rptr. 451], made a thorough survey of cases in this state and other jurisdictions interpreting the statutes that forbid bribery "upon any understanding or agreement" resulting in the corruption of governmental processes. As here, *Gliksman* involved an act of bribery of a witness in which one party secretly cooperated with the police. The court was called upon to construe Penal Code section 138, which makes it a felony for a witness to seek a bribe "upon any understanding" that he will alter his testimony.

*Gliksman* initially observed that the courts in California have almost uniformly rejected the contention that a statutory requirement of a bribe "upon any agreement or understanding" refers to formation of a bilateral agreement. (E.g., *People v. Squires* (1893) 99 Cal. 327, 330 [33 P. 1092]; *People v. Montgomery* (1976) 61 Cal.App.3d 718, 732 [132 Cal.Rptr. 558]; *People v. Vollmann* (1946) 73 Cal.App.2d 769, 788 [167 Cal.Rptr. 545]; *People v. Brigham* (1945) 72 Cal.App.2d 1, 7 [163 P.2d 891].) Rather, the language means that bribery must be proposed by the person offering to give or to receive the bribe, as the case may be, with the criminal intent that a corrupt act will be committed by the one accepting the bribe; if the offender has that intent, the fact that the other party does not subjectively intend to perform is irrelevant.

Agreeing with the rule of these cases, *Gliksman* reasoned that the intent of the Legislature in specifying a bribe sought "upon any understanding" (Pen. Code, § 138) was to punish bribery in which one party proposes a corrupt act by the other. "If the Legislature had intended that a mutual understanding is essential, it could have reasonably provided that the essence of the crime be 'entering into an agreement' or 'agreeing' with another to be bribed." (*Gliksman, supra*, 78 Cal.App.3d at p. 350.)

An earlier case, *In re Jang* (1938) 25 Cal.App.2d 529 [78 P.2d 250], did require a corrupt bargain as an element of the offense of bribery (Pen. Code, § 137 ["upon any understanding or agreement that the testimony of such witness shall be ... influenced"]). However, *Jang* relied on an erroneous interpretation of our decision in *People v. Weitzel* (1927) 201 Cal. 116 [255 P. 792, 52 A.L.R. 811]. *Weitzel* construed

Penal Code section 165, punishing a public official who "agrees to receive any bribe." In holding that the section demanded a mutual agreement, *Weitzel* was careful to distinguish language in statutes such as Penal Code section 136 1/2 that forbids an *offer* to receive a bribe, since a person can make an "offer" unilaterally, but cannot "agree" with himself. (*Id.* at p. 120.)[3]

We approve of the reasoning of *Gliksman* and the authority cited therein, and believe it is equally applicable to the language of section 136 1/2, the statute at issue here. An additional reason supports our conclusion. The purpose of the laws against bribery is to prevent corrupt interference with the administration of justice. (*People v. McAllister* (1929) 99 Cal.App. 37, 40 [277 P. 1082].) To hold that section 136 1/2 requires a "meeting of the minds" would make it exceedingly difficult to enforce the provision. First, those who offer to bribe witnesses would escape punishment in cases in which "others might feign to be their accomplices and in which no evidence against the defendants exists except that to come from those feigned accomplices." (*People v. Montgomery, supra,* 61 Cal.App.3d at p. 732.) A person knowledgeable in the law could bribe with impunity, knowing that the one individual with evidence of his misdeed would save him from punishment by the very act of informing the police at the time the bribe is offered. Without clear wording to that effect, we cannot assume that the Legislature meant to predicate criminal liability of a defendant on the criminal intent of another. And we are especially hesitant to make such an assumption when the integrity of our system of justice is at stake.

We therefore hold that a bilateral agreement is not a necessary element of the crime of offering a bribe to a witness to prevent his attendance at trial. It is sufficient if the defendant offers the bribe with the intent of persuading the witness to "agree" not to testify. To the extent that *Jang* conflicts with this holding, it is hereby disapproved.

---

[3]Our decision in *People v. Terry* (1955) 44 Cal.2d 371 [282 P.2d 19], undermines *Jang.* In affirming a conviction under Penal Code section 137, we found that an agreement to influence testimony could be inferred from the evidence. "An agreement implies a meeting of minds, but it would be an absurdity to insist that such meeting of minds must exist as to every detail. It is sufficient if, under all of the circumstances, the parties understand that the testimony will be influenced in some manner by the giving of the bribe." (*Id.* at p. 377.) This marked a clear retreat from *Jang's* view that "there can be no agreement or understanding without a meeting of minds—a person cannot agree with himself." (25 Cal.App.2d at p. 532.) Thus, a conviction may be sustained if it is proved beyond a reasonable doubt that the bribe was offered for the *purpose* of obtaining the quid pro quo of altered testimony.

■ The court's second ground for setting aside count III was that the pledge signed by the victim of the theft, Kerhulas, did not expressly state that he would "not attend ... trial." (Pen. Code, § 136 1/2.) The court was apparently persuaded by defendant's argument that the document was at most a promise to "drop the case." Defendant relied on *Lichens* v. *Superior Court* (1960) 181 Cal.App.2d 573 [5 Cal.Rptr. 539], which held that a bribe offered to convince a witness to drop the case was not an effort to prevent attendance at trial within the meaning of section 136 1/2.

The document drafted by defendant provided that Kerhulas would agree to "seek the dismissal of all criminal charges which may have been filed ... and to do everything within my power to prevent the filing of any additional charges against any person." Kerhulas would also promise to "refuse to prosecute criminal charges against anyone." The People are correct in maintaining that a reasonable grand juror would have probable cause to believe that such language was a promise not to attend "trial or other judicial proceeding." Nonattendance is clearly within the scope of Kerhulas' pledge to "do everything within my power." With regard to the agreement that Kerhulas would "refuse to prosecute," defendant himself testified that the only act a witness can perform to prevent prosecution in nonmisdemeanor cases is to "refuse to testify." The grand jury could reasonably conclude that defendant had that meaning in mind when he drafted the agreement and presented it to Kerhulas.

Moreover, the cases have never suggested that the briber must parrot the precise words of the statute in order to perpetrate the offense. In *People* v. *Thomas* (1978) 83 Cal.App.3d 511 [148 Cal.Rptr. 52], the defendant was charged by information with violations of former Penal Code section 136, subdivision (b) (using force or threats to prevent a witness from attending trial). The defendant had allegedly approached a witness in the hallway outside the courtroom and, in a loud, clear, and angry voice, uttered expletives and told the witness he would kill her for having "put my mother in jail." The Court of Appeal reversed, declaring that "[t]here is, of course, no talismanic requirement that a defendant must say 'Don't testify' or words tantamount thereto.... As long as his words or actions support the inference that he ... sought to prevent or dissuade a potential witness from attending upon a trial ... a defendant is properly held to answer." (*Id.* at p. 514.) In accord with *Thomas* is *People* v. *Broce* (1977) 76 Cal.App.3d 71, 76 [142 Cal.Rptr. 628], in which the evidence showed that the defendant had threatened

an eyewitness in order to make her reverse her statement to the police. The court held that the facts could support a conviction for using threats to induce a witness to alter "testimony" (Pen. Code, § 137), even though a prosecution had not yet been initiated.

Read together, *Thomas* and *Broce* reveal that no express statement of the purpose of a bribe is needed in order for the factfinder to gather, from all the circumstances, that the accused sought to persuade a witness to absent himself. This rule is the logical extension of a long line of authority settling an analogous issue by holding that the law does not require that the words "I am bribing you" or "I want a bribe" be spoken before the inference of an offer or solicitation of a bribe may be drawn. "'The [offer or] solicitation of a bribe need not be stated in any particular language; such a solicitation may be in the form of words which carry the import of a bribe and were evidently intended to be so understood.'" (*People* v. *Gordon* (1975) 47 Cal.App.3d 465, 472 [120 Cal. Rptr. 840]; see also *People* v. *King* (1963) 218 Cal.App.2d 602, 610 [32 Cal.Rptr. 479]; *People* v. *Bompensiero* (1956) 142 Cal.App.2d 693, 706 [299 P.2d 725].)

Defendant's reliance on *Lichens* v. *Superior Court, supra,* 181 Cal. App.2d 573, is misplaced. The case concerned a defendant charged with rape who offered a bribe to the prosecutrix in return for her pledge to "drop the case." The court held that the evidence failed to show an agreement not to attend trial within the meaning of former section 136 1/2, since the only way to drop the case would be to request the district attorney to give his necessary consent; thus the promise did not imply nonattendance at trial.[4] But Kerhulas' burden in the present case was much greater, since under the agreement he had to "*refuse* to prosecute" and "do *everything*" to prevent further charges. Absenting himself from trial would have been an obvious means of keeping the bargain.

We conclude, then, that an indictment under section 136 1/2 may be supported by an inference, based on the defendant's words or actions,

---

[4]At the time *Lichens* was decided, section 136 1/2 prohibited bribery intended to prevent a witness' attendance at "trial." The section was subsequently amended to include nonattendance at any "other judicial proceeding" as well. It has been suggested that *Lichens* is no longer good law since the adoption of the amendment. (See *People* v. *Broce, supra,* 76 Cal.App.3d at p. 77; *Review of 1963 Code Legislation* (1963) 38 State Bar J. 606, 743-744.) Arguably, a promise by the prosecutrix to "drop the case" could include nonattendance at a pretrial hearing. We do not reach the issue here.

that he has violated the statute; no express statement by the defendant of his intent to prevent the witness' testimony is required. Here, as already discussed, the words of the illicit contract and defendant's testimony interpreting those words furnished probable cause for the grand jury's action.

### *The Charge of Bribery to Influence Testimony*

Count IV of the indictment charged defendant with a violation of Penal Code section 137, which at the time provided in pertinent part: "(a) Every person who gives, or offers, or promises to give, to any witness, or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced is guilty of a felony."

■ *The court relied on the same ground in setting aside count IV as it did in dismissing count III: i.e., because the agreement drafted by defendant did not expressly refer to the withholding or adulteration of Kerhulas' "testimony," it could not represent an effort to influence testimony within the terms of section 137, subdivision (a).*

Because our reasoning with respect to section 136 1/2 applies to section 137 as well, we need not repeat it here.[5] The court was incorrect in requiring a literal reference to "testimony" as an element of section 137. The grand jury had probable cause to believe that defendant intended to influence Kerhulas' testimony by way of persuading him to withhold it altogether, in exchange for the return of his property.

### *The Charge of Compounding a Felony*

The final count set aside by the trial court—count V—charged defendant with compounding a felony. The pertinent part of Penal Code section 153 makes punishable "Every person who, having knowledge of the actual commission of a crime, takes money or property of another,

---

[5]We only note that although the statute does not define "influence" of testimony in subdivision (a), the definition is provided by implication in subdivision (b). An inducement "to give false testimony or withhold true testimony" is the conduct proscribed in subdivision (b). Both subdivisions are concerned with conduct having an impact on testimony. It is apparent that an inducement to withhold testimony is a form of the "influence" of testimony prohibited in subdivision (a). Moreover, before the 1977 amendment that reorganized section 137 into subdivisions, "influence" of testimony and inducement to withhold testimony were used interchangeably.

or any gratuity or reward, or any engagement, or promise thereof, upon any agreement or understanding to compound or conceal such crime, or to abstain from any prosecution thereof, or to withhold any evidence thereof . . . ."

The court justified its dismissal of count V by a two-step evaluation of the evidence. First, as it was Kerhulas rather than defendant who was to "abstain from prosecution," Kerhulas would be the compounder and defendant could at most be an aider and abettor. Secondly, because Kerhulas was only pretending to ratify the nonprosecution agreement, there was no crime for defendant to aid and abet.

We are persuaded by the People's contention that the court read section 153 in a manner not supported by its text. The statute encompasses conduct by "every person" who takes money or other "reward . . . or promise thereof . . . upon any agreement or understanding to compound" a crime. The court, without discussion, limited the meaning of "every person" to the victim of a crime who is paid not to prosecute. No dispositive authority in California confirms that restrictive interpretation.

Recently, in *Hoines v. Barney's Club, Inc.* (1980) 28 Cal.3d 603 [170 Cal.Rptr. 42, 620 P.2d 628], we had occasion to discuss the elements of compounding and the policy expressed by section 153. We were called upon to decide the validity of a release of all claims related to an arrest, signed by the accused in return for dismissal of charges by the prosecutor. The issue entailed an examination of section 153 to learn if the prosecutor had violated its provisions in arranging for the release in exchange for nonprosecution. We determined that since the prosecutor was not paid by the complainants in the case to strike the deal, no violation of the statute could have occurred: "No claim is made that the prosecutor in the instant case personally received any consideration for moving to dismiss charges pending against plaintiff. So far as research discloses the crime may be committed only by a person—including accomplices—receiving consideration pursuant to agreement to frustrate prosecution for criminal conduct." (*Id.* at p. 610.) Our decision left the implication that the presence of consideration received by the prosecutor would have completed the offense.[6] *Hoines* thus buttresses

---

[6]The dissenters in *Hoines* appeared to agree that had the prosecutor profited from the transaction, he would have been guilty of compounding the crime. In fact, the dissent suggested that the release alone might have been sufficient consideration. (*Id.* at p. 618, fn. 10.)

the conclusion that the Legislature made no misstatement when it declared that *every* party who profits from inducing the compounding of a crime is within the scope of the statute.

There are regrettable similarities between a prosecutor's receipt of consideration to arrange a nonprosecution deal and the conduct of defendant, who is an attorney, in the present case. Both situations involve an officer of the court acting as a paid accomplice of the alleged perpetrators and victims of crime who together propose to frustrate the operation of justice. Here the consideration came from both parties—defendant received a promise of a fee for his services from his client, and the $2,500 and "release" from Kerhulas.

*Hoines* reiterated the elements of the offense of compounding: (1) knowledge of the crime; (2) an agreement not to prosecute that crime; (3) receipt of consideration. (*Ibid.*; see also *Bowyer v. Burgess* (1960) 54 Cal.2d 97, 100 [4 Cal.Rptr. 521, 351 P.2d 793].) We have already noted that defendant prepared the nonprosecution agreement and was promised payment for the task; he also obviously had knowledge of the theft and whereabouts of Kerhulas' property. A factfinder could thus conclude that his actions supplied all the elements of compounding, unlike the conduct of the prosecutor in *Hoines*.

It is true that the common law offense of compounding a crime was usually applied only to the victim who accepted something of value in exchange for concealing or not prosecuting the crime. (Perkins on Criminal Law (2d ed. 1969) p. 518.) Since the statutory version of the offense was added to our Penal Code, however, the provision has never been enforced exclusively against a victim, but rather against any person who profits from compounding. (See, e.g., *People v. Byron* (1894) 103 Cal. 675 [37 P. 754] [witness]; *People v. Raymond* (1927) 87 Cal.App. 510 [262 P. 442] [killer's friend; victim's physician].) Statutes in a number of other jurisdictions have also been applied to persons other than victims who were paid for their participation in the compounding of the crime or collected illicit payments on behalf of others. (See *State v. Fisher* (1920) 94 N.J.L. 24 [110 A. 124], revd. on other grounds, (1921) 95 N.J.L. 419 [113 A. 607] [police chief]; *State v. Ash* (1898) 33 Ore. 86 [54 P. 184] [police officer took money to be forwarded to police chief]; *State v. Ruthven* (1882) 58 Iowa 121 [12 N.W. 235] [victim's brother]; *State v. Henning* (1870) 33 Ind. 189 [prosecutor].)

Moreover, restrictive reading of compounding statutes has been criticized by the commentators, notably by the drafters of the Model Penal Code: "The most outright attempt by a murderer or his relatives to buy off the widow would not make them guilty of compounding.... This result [is] inconsistent with the notion that this law is to prevent obstruction of justice...." (Model Pen. Code (Tent. Draft No. 9, 1959) com. to § 208.32A, pp. 206-207; see also Perkins, *op. cit. supra*, at pp. 520-521, fn. 28.)[7] In response to this criticism, at least six states have amended statutes that appeared to cover only victims to now include other parties as well. (See statutes cited in Comment, *Compounding Crimes: Time for Enforcement?* (1975) 27 Hastings L.J. 175, 189-190, fn. 78.) In light of this trend, we decline to give a needlessly restrictive meaning to the words of section 153 which, on their face, cover a party to the illicit negotiations regardless of whether he is the one who refrains from prosecuting the crime. Indeed, in the case at bar the words of section 153 seem particularly applicable to defendant rather than Kerhulas, as it is difficult to see how Kerhulas' recovery of his own property could be the taking of "money or property of another."

We therefore hold that any participant in the compounding transaction who fulfills the above-listed elements of section 153 is in violation of the statute. As already shown, the grand jury had ample cause here to suspect defendant of compounding the felony theft of Kerhulas' property.[8]

The order is reversed and the trial court is directed to reinstate counts III, IV, and V of the indictment.

Richardson, J., Newman, J., and Reynoso, J., concurred.

KAUS, J., Concurring and Dissenting.—I respectfully dissent from the court's holding that the trial court erred in setting aside count V—compounding a felony.

---

[7]Some decisions have suggested in dicta that the law against compounding would apply to intermediaries negotiating a compounding agreement between the injured party and the accused. *In re Friedland* (1971) 59 N.J. 209 [280 A.2d 183, 188], for example, involved a disciplinary proceeding brought against attorneys who each represented both parties in negotiating a compounding agreement. The court appeared to assume that both attorneys would be guilty of compounding if the accused had been convicted of the original crime.

[8]The trial court's other ground for dismissal of count V was that there was no real "agreement" between Kerhulas, the injured party, and defendant. The contention has already been disposed of in our discussion of count III.

As the majority points out, under Penal Code section 153 there are three elements to the offense of compounding a crime: (1) knowledge of the original crime; (2) an agreement not to prosecute that crime; and (3) receipt of consideration.[1] The difficulty here is, obviously, element (2): Pic'l never agreed not to prosecute, but, rather, solicited Kerhulas to so agree.

The majority asserts that the words of section 153 cover a party "regardless of whether he is the one who refrains from prosecuting the crime." I can agree that it does no violence to the statute, as presently worded, to hold that persons other than the victim of the underlying felony who agree to compound or conceal a crime may violate section 153. That is what the dictum in *Hoines v. Barney's Club, Inc.* (1980) 28 Cal.3d 603, 610 [170 Cal.Rptr. 42, 620 P.2d 628], was all about.

It is, however, an entirely different matter to extend the reach of the statute to a person such as Pic'l who never agreed with anyone that he would compound or conceal the theft of the stolen drag racer. With all respect to the majority, I simply find it impossible to interpret section 153 as it presently reads as condemning the conduct of both parties to the "illicit negotiations" —the solicitor-promisee (Pic'l) as well as the solicitee-promisor (Kerhulas). Particularly in light of its common law heritage, the language of section 153— "[e]very person who . . . takes money [etc.] . . . upon any agreement . . . to abstain from any prosecution thereof . . ." (see fn. 1, *ante*)—simply cannot be stretched to cover not only the person who agrees not to prosecute, but also the one who solicits the agreement.

Contrary to the implication of the majority opinion (*ante*, p. 745), in my view the Model Penal Code provides no support for the majority's interpretation of section 153. Nowhere in the code's extensive discussion of the origin and development of the crime of compounding is it suggested that compounding statutes similar to section 153 should properly be interpreted to apply to a person who solicits an agreement not to prosecute as well as the person who actually agrees not to prosecute. (See 3 Model Pen. Code (Official Draft 1980 ed.) § 242.5 & com. at pp. 244-247, 255-256.) Indeed, the commentary to the code makes it

---

[1] Section 153 reads in part: "Every person who, having knowledge of the actual commission of a crime, takes money or property of another, or any gratuity or reward . . . upon any agreement or understanding to compound or conceal such crime, or to abstain from any prosecution thereof, or to withhold any evidence thereof . . . is punishable as follows: . . ."

clear that in framing the most current, official draft of the code's recommended compounding statute, the draftsmen consciously decided *not* to extend the reach of the statute to cover a party—like Pic'l—who solicits or pays for the promise not to prosecute. (*Id.*, at p. 256.)[2]

I fully agree with the majority that morally the solicitor of such an agreement is at least as guilty as the solicitee. This is undoubtedly the reason why six jurisdictions listed in the Hastings Law Journal footnote referred to in the majority opinion (*ante*, p. 745) have enacted statutes punishing not only the solicitee-promisor but also the solicitor-promisee. I reproduce the footnote below.[3] If I were a legislator, I might well vote for such a statute. As a judge, however, I cannot stretch the meaning of section 153 so as to make the legislation unnecessary.

Bird, C. J., and Broussard, J., concurred.

---

[2]The commentary states: "It may be argued that the exemption of the original wrongdoer, however explicable historically, lacks sound basis in policy. Some modern revision efforts have accepted this conclusion by including the alleged offender who pays for the promise not to prosecute as well as the victim or witness who accepts the payment. Section 242.5 does not provide for this result, however, on the ground that prosecution for the underlying offense itself, which of course will not be forestalled by the effort to undermine discovery of the offense, provides an adequate response, supplemented by the provision on tampering with witnesses and informants wherever that offense is applicable." (Fns. omitted.)

[3]The footnote (Comment, *Compounding Crimes: Time for Enforcement?* (1975) 27 Hastings L.J. 175, 190, fn. 78) reads: "See Del. Code Ann. tit. 11, § 1246 (1973); Ill. Ann. Stat. ch. 38, § 32-1 (Supp. 1974) ch. 406, § 165, [1974] Ky. Acts 858; N.H. Rev. Stat. Ann. § 642:5 (Supp. 1973); N.Y. Penal Law § 215.45 (McKinney 1967); Utah Code Ann. § 76-8-308 (Supp. 1973). According to the Illinois statute, a person 'compounds a crime when he receives or *offers* to another any consideration for a promise not to prosecute or aid in the prosecution of an offender.' Ill. Ann. Stat. ch. 38, § 32-1 (Supp. 1974) (emphasis added). The other five states all use wording such as that in the New York compounding statute, whereby one compounds a crime when '(a) He solicits, accepts or agrees to accept any benefit upon an agreement or understanding that he will refrain from initiating a prosecution for a crime; or (b) He *confers, or offers or agrees to confer*, any benefit upon another person upon an agreement or understanding that such other person will refrain from initiating a prosecution for a crime.' N.Y. Penal Law § 215.45 (McKinney 1967) (emphasis added)."