[Crim. No. 5697.   In Bank.   Apr. 22, 1955.]

THE PEOPLE, Respondent, v. GRADY C. TERRY et al., Defendants; LLOYD FRED ROSSI, Appellant.

William H. Rosenthal, Marshall Gumbiner and Joseph Ostrow for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant Rossi appeals from a judgment of conviction for violating section 137 of the Penal Code and from an order denying his motion for a new trial.

Defendants Terry and Rossi were accused of violating said section in that they gave and promised to give a bribe to Norman Moore and John Mallick, persons who were about to be called as witnesses, upon the understanding and agreement that their testimony would thereby be influenced. The trial court, sitting without a jury, convicted the defendants. Proceedings were suspended and each defendant was granted three years' probation and was fined $400. Defendants' motion for a new trial was denied. The appeal is taken only by defendant Rossi. He contends: (1) that the evidence shows as a matter of law that he was entrapped; and (2) that the evidence is insufficient to support the verdict.

As to the first contention, "entrapment 'is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial' (*People* v. *Schwartz, supra* [109 Cal.App.2d 450 (240 P.2d 1024)], at p. 455; *People* v. *Grijalva,* 48 Cal.App.2d 690, 694 [121 P.2d 32]; *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003])." (*People* v. *Braddock,* 41 Cal.2d 794, 803 [264 P.2d 521].) Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit

the particular offense originated in the mind of the accused. (*People* v. *Braddock, supra,* 41 Cal.2d 794, 802.) A review of the record here shows that there is ample evidence to support the trial court's implied finding that the criminal intent originated with the defendants.

Defendant Rossi's bartender was arrested on July 8, 1953, for an alleged violation of section 62 of the Alcoholic Beverage Control Act (furnishing alcoholic beverage to an obviously intoxicated person). He was arrested by Officers Moore and De Madelena. Rossi and Terry owned bars approximately six blocks apart and had known each other for two or three years. Officer Moore first met defendant Terry approximately six years prior to the trial, and he first met defendant Rossi at his bar at approximately 11:50 p. m. on July 24, 1953.

Officer Sillings, who was present when Rossi was questioned at the police station, testified that Rossi admitted that he was aware that ABC (Alcoholic Beverage Control Act) arrest had been made in his establishment. Rossi also stated that Terry first discussed the arrest with him on July 23, 1953. At that time Rossi mentioned that he thought one of the arresting officers was Officer Moore. Terry said that he had known Officer Moore for five or six years. Sillings then testified that Rossi said that the substance of his conversation with Terry had been to the effect that "through· the influence of Mr. Terry, Officer Moore could do Mr. Rossi some good on his ABC pinch. And Mr. Rossi said, 'So, naturally I wanted to meet the officer and talk it over with him.' And a meeting was arranged for the following night, Saturday night."

Rossi was asked, "Just what did you expect this officer to do?" Rossi answered, "Well, it is kind of a friendship deal between Terry and I. We are both bar owners in the vicinity and I thought maybe the officer could kind of go easy on the evidence; and if I were found not guilty, then I wouldn't have to go to the State Board."

This conversation between defendants Terry and Rossi took place at Rossi's bar on the 23d of July, 1953, the day before Terry first talked to Officer Moore about the bartender. From that testimony the trial court could infer that on the day before Terry first talked to Moore about the bartender's case, Rossi had formed the idea that Moore could do "some good" in the bartender's case; could be influenced to "go easy on the evidence." therein, and he, Rossi, "naturally" wanted to meet the officer and "talk it over with him."

Officer Moore testified that he and his partner, Officer Mallick, saw Terry in front of his bar at approximately 2:00 p. m. on the 24th of July, 1953. Terry asked them to come into the bar and inquired whether they had made the ABC arrest in Rossi's bar. Moore answered that he was one of the arresting officers. Terry then said that Rossi had just received his whiskey license and didn't want it suspended; and inasmuch as Rossi was his friend, he asked if Moore would be able to do something about the arrest. Terry "said that if we could do something for him, it would be the price of a couple boxes of cigars." Moore asked Terry what he could do. Terry "suggested that [Moore] fall down on the steps breaking the evidence." Moore stated that he did not know about that, and he started to leave. As Moore passed by the door, Terry tapped him on the shoulder and held up two fingers and "whispered, two hundred. And then stated that he would like to see [them] that night."

At approximately 10:50 p. m. that same night, Officer Moore again met Terry and asked him "what the deal was." Terry stated, "This guy I was telling you about will be worth $200 if you can do something for him." Terry stated he would like to see Moore do something for him because he would face a 15-day suspension if he was convicted. Moore said he might be able to do something along that line, but that he would have to have something to go on. Terry asked him how much, and he stated that it would take at least $50 to get started. Terry then stated that he would have to see Rossi in regard to the thing and then left, walking in the direction of Rossi's bar.

Officer Moore was asked if, during the second conversation with Terry at 10:50 p. m., on July 24, 1953, any mention was made of the conversation had between himself and Terry four months previously outside of Division 7 in the Hall of Justice. He answered in the affirmative and stated: "I directed Terry to the conversation that we had outside Division 7 . . . I asked him what the deal was on making these ABC pinches. Mr. Terry stated that the only thing I would have to do is make ABC pinches and that he would go to the bar the next day and just happen to be in there. [Terry] said, 'Of course the owner will tell me about receiving·a pinch and I will tell him that I might be able to do something for him.' [Terry] says, 'The only thing you have to do is when you make the arrest is to substitute the drink that you take with a non-alcoholic beverage or change your testimony

in some way.' [Terry] said, 'It will be worth $500 or $1,000 or whatever we can get on the thing.' '' This conversation occurred on July 24, 1953, and was not the conversation which had taken place four months previously. Later, in cross-examination, Moore was asked whether Terry at any time had offered him $500. Moore answered affirmatively, stating that this had occurred outside of Division 7. There is no evidence as to what was said at that time.

■ Resolving all conflicts and indulging in all reasonable inferences in support of the judgment, it is clear that the evidence does not show, as a matter of law, that the criminal design originated with Officer Moore. On the contrary, there was ample evidence to show that Rossi formulated the idea that Officer Moore could be influenced to go easy on the evidence prior to the talks between Terry and Moore concerning Rossi's bartender; and that Terry did not talk to Moore about Rossi's bartender prior to July 24, 1953, the day after Terry's and Rossi's conversation at Rossi's bar.

■ It was for the trial court to determine as a matter of fact whether Rossi had a preexisting intent to commit the particular offense with which he was charged. The trial court could infer from Officer Silling's testimony that Rossi and Terry had the idea of influencing Moore's testimony, and that such idea was formulated on July 23, 1953; and there is no evidence in the record from which it may be inferred that Moore prevailed upon Terry in any way prior to July 23, 1953, to induce Rossi to commit the offense with which he is charged. We therefore conclude that there was ample evidence to sustain the implied finding that there was no entrapment.

Defendant Rossi's second contention is that the evidence is insufficient to support a finding that there was an ''understanding'' or ''agreement'' between himself and Officer Moore to influence the latter's testimony. ■ An essential requirement of section 137 of the Penal Code is that there must be an ''understanding or agreement that the testimony of such witness shall be thereby influenced.'' Defendant relies on the case of *In re Jang*, 25 Cal.App.2d 529 [78 P.2d 250]. The court there held that an essential requirement of an agreement or understanding is a meeting of minds.

■ It is clear that the evidence in the present case supports the implied finding that there was an agreement or understanding between defendant Rossi and Officer Moore that the latter's testimony would be influenced. In *In re*

*Jang, supra,* 25 Cal.App.2d 529, there was no evidence of an agreement to influence any testimony, whereas the evidence set out below leaves no doubt concerning the existence of an agreement to influence Officer Moore's testimony.

Pertinent testimony as to the agreement can be found in the conversation between Terry and Rossi on July 23d, the conversation between Terry, Rossi and Officer Moore on July 24th, and the conversation between Rossi and Officer Sillings on July 24th, at the police station. As to the conversation of the 23d, Officer Sillings testified that Rossi said he was aware that an arrest had been made in his establishment for a violation of the Alcoholic Beverage Control Act. Rossi further said that Terry had visited him on the 23d, and that the substance of the conversation was that through the influence of Terry, Officer Moore could do Rossi some good on his ABC arrest, and that Rossi "naturally . . . wanted to meet the officer and talk it over with him." A meeting was arranged for the following night. In answer to the question of what he thought Moore could do for him, Rossi said, "I thought maybe the officer could kind of go easy on the evidence; and if I were found not guilty, then I wouldn't have to go to the State Board."

Officer Moore testified that in the conversation of July 24th between himself, Rossi and Terry, Moore was introduced to Rossi as the officer who had made the arrest. Rossi was then told that Moore was in a hurry, and Rossi replied, "All right; what is the deal?" Moore said, "Didn't Terry give you the details on this thing?" Rossi answered, "Yes, he said it was $500 bucks; but I got taken for $1,500 once, so I would like to put the thing in escrow or work something along those lines." Moore replied that he couldn't do that, and Terry told Rossi "we need $50 now and the rest could come after the pinch was taken care of," and if "we didn't do something for him he would get the $50 back." Terry then told Rossi that if he welshed on the deal, he would get pinched every day. Rossi replied that "I am not trying to welsh on this thing, I just want to have all the facts straight." Rossi then asked if Moore wanted the $50 now, and he was told by Moore that he would have to see Terry on that, as Terry handled the details. Terry and Rossi then walked into Rossi's bar and when Terry returned, Terry handed $50 to Moore.

From the foregoing testimony the trial court could infer that Officer Moore, Terry and Rossi met on July 24th to consummate a "deal" by which Moore's testimony would be

favorably influenced, and that the deal would cost Rossi a certain sum of money. Terry's usage of "we" in the presence of Moore and Rossi, in the absence of any denial by Moore, further indicates acquiescence in the deal by Moore. It could also be inferred that the deal concerned the arrest which was made at Rossi's bar for violation of the Alcoholic Beverage Control Act, in which Moore participated and for which case he was subpenaed as a witness.

Direct evidence concerning the precise details of a corrupt agreement is seldom available and reliance must often be placed on inferences concerning such details. This was recognized in *People* v. *Graves,* 137 Cal.App. 1 [29 P.2d 807, 30 P.2d 508], which affirmed a conviction of receiving and agreeing to receive a bribe upon the agreement and understanding that the defendant's vote would be influenced. The court commented that "it is, of course, true that there is no direct testimony of the alleged fact that appellant corruptly agreed to vote and did corruptly vote for the compromise . . . but there are circumstances present in this case . . . that baffle any other explanation. . . ." (P. 13.) The agreement to influence Officer Moore's testimony can reasonably be inferred in the present case. ■ An agreement implies a meeting of minds, but it would be an absurdity to insist that such meeting of minds must exist as to every detail. It is sufficient if, under all of the circumstances, the parties understand that the testimony will be influenced in some manner by the giving of the bribe.

The judgment and order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—In my view the opinion prepared for the District Court of Appeal by Presiding Justice Shinn and concurred in by Justice Vallée (reported in (Cal.App.) 278 P.2d 49), adequately discusses and correctly resolves the questions presented on this appeal. For the reasons therein stated I would reverse the judgment and the order denying appellant's motion for a new trial.

Carter, J., concurred.

Appellant's petition for a rehearing was denied May 18, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.