[Crim. No. 5781.   Second Dist., Div. One.   Apr. 1, 1957.]

THE PEOPLE, Respondent, v. QUINCY McCRASKY, Appellant.

Quincy McCrasky, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and George M. Goffin, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an indictment returned by the Grand Jury of Los Angeles County, defendant was accused of violating section 11500 of the Health and Safety Code in that he did sell, furnish and give away a preparation of heroin. A plea of not guilty was entered and a jury found defendant guilty as charged. His motion for a new trial was denied and he was sentenced to state prison. From the judgment of conviction defendant prosecutes this appeal.

The following will serve as a fair epitome of the factual background surrounding this prosecution.

One Louis (Sonny) Dennis was an undercover informant for Hubert Greene, a Los Angeles city police officer. They had worked together on a number of cases prior to the instant one. On all of these occasions Officer Greene had paid Dennis for the information he transmitted to the officer, but the latter testified he paid the informer regardless of whether the information resulted in an arrest, and that no payment amounted to more than $5.00. The officer's instruction from his superior was to give the informer $5.00 each time they worked together. To the knowledge of Officer Greene, Dennis was not known as a narcotics user. The officer's first knowledge of defendant was obtained from Dennis.

Officer Greene testified that on the morning of September 7, 1955, about 10:15 o'clock, he met the informer Dennis at the latter's residence. That the two of them went directly to defendant's cleaning shop, which consisted of a small room near 30th Street and Central Avenue in the city of Los Angeles, and in which at the front thereof, was a pressing machine. It is conceded that defendant and the informer were known to each other. At the time of this visit there was a third person in the shop, but Officer Greene, defendant and Dennis conversed outside the presence and hearing of this other person. Officer Greene further testified that the informer asked defendant "if he had any stuff" and the latter replied, "Let's step out on the sidewalk and talk." That the three of them went out on the sidewalk, where the informer Dennis inquired of defendant whether the latter could purchase a "spoon." That defendant said he could but that he would have to make a phone call first. He walked into a liquor store that was located next to the cleaning establishment, made a phone call, and then returned to the street. The three of them reentered the cleaning shop. Officer Greene then asked the defendant how much it would cost him for the

"spoon," and the defendant told him that the price would be $25. The officer gave him the $25.

The defendant asked Officer Greene to go to the corner of 33d and Wadsworth and wait for him at this location. He stated that he would deliver the heroin at that location in approximately 10 minutes. Officer Greene went to this corner and at about 10:55 a. m. the defendant appeared. The officer got out of his automobile and met him, and the defendant gave him the bindle. During this entire period of time Dennis was with Officer Greene. Three day later defendant was arrested. In the interim between the purchase of the heroin on September 7th until defendant's arrest on September 10th, Officer Greene had seen defendant several times, but when he visited defendant's establishment on these subsequent occasions he did not inform defendant that he was a police officer nor did he receive any narcotics from defendant or hear anyone inquire about or ask for narcotics.

As a witness in his own behalf defendant testified that he was in the cleaning and pressing business at the aforesaid address and had been for 16 years; that he does not nor has he ever used any narcotics, and that he had never to his knowledge seen any heroin.

With regard to the informer Dennis, defendant testified that the former would attend the shop while defendant would run errands, such as "taking cleaning to the wholesale cleaners and go out and pick up cleaning and go out and eat my lunch," That Dennis received no regular compensation, but that "sometimes he bought his lunch and gave him 25 or 50 cents."

As to the date here in question defendant testified that on September 7, 1955, he saw the informer Dennis prior to the time he came to the cleaning establishment with Officer Greene. That on that occasion Dennis told defendant he needed $5.00 but that defendant informed him he did not have any money. Dennis thereupon departed but returned later in the company of Officer Greene, and introduced the latter to defendant in front of the store. That Dennis thereupon told the defendant he wanted to talk to him in the rear of the store. That, accompanied by Dennis, he went to the rear where Dennis told defendant that Greene had money; that Dennis had a chance to make some money, and wanted defendant to help him but that he (defendant) refused, saying, "No, I won't do no favor today. I haven't got time." Defendant further testified that Dennis "kept on begging. Then I says, 'What favor do you want done?'" to which Dennis replied, "I want you

to deliver some stuff." That defendant replied, "What stuff . . . I don't want to fool with no stuff." In answer to a question as to whether he knew what was meant by "stuff," defendant replied, "Well, I heard it on the avenue. They call it dope." According to defendant's testimony, Dennis "kept on begging and begging" and finally the informer said he would do the dealing on the telephone and defendant should talk to the man at the other end of the line. That defendant was to do the talking on the telephone because the other party on the telephone would suspect Dennis of being a "stool pigeon," and would not sell the "stuff" to him. According to defendant's testimony, he and Dennis then went to an adjoining liquor store, where Dennis told defendant that the name of the man at the other end of the line was Peter. That defendant introduced himself to Peter and this man stated that he did not know him. Defendant told him that a friend of his had mentioned his name. He then asked him if he wanted to make a $25 deal. He was told to meet Peter down the alley. He met him. Peter's face was familiar. The defendant had seen him on previous occasions on the avenue. The defendant gave the money, which had been given to him by Dennis, and Peter transferred to him the package. The money had been given to the defendant by Dennis in the back of the cleaning establishment. The defendant took the package to the location where he was to meet Officer Greene and Dennis and he handed it into the car where Officer Greene and Dennis were sitting. Defendant then went back to his shop.

He testified that he had not seen Mr. Dennis since September 7th. However, he had seen Officer Greene five or six days in succession after he had delivered the "dope" to him. Defendant testified that he has never delivered narcotics to anyone before and he only did it this time because Dennis kept begging him to do so, and because Dennis had always been honest with him in the past. Defendant testified further that he had not changed the wrapping on the bindle but that he had transferred the package as it had been given to him.

As his first ground for reversal of the judgment appellant contends that "The court was guilty of abuse of discretion in not permitting the informer to testify where the court relied upon the sole testimony of Officer Greene." ▮ This contention cannot be sustained because, first of all, neither side was required to produce all witnesses who might be able to testify so long as there is fairly presented to the

court the material evidence bearing upon the charge for which the accused is on trial. There is no requirement in either the federal or state constitution that all witnesses or persons who may have knowledge of the crime be produced in court or called to testify (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Chapin,* 145 Cal.App.2d 740, 748 [303 P.2d 365]; *People* v. *O'Neill,* 78 Cal.App.2d 888, 891, 892 [179 P.2d 10]; *People* v. *Parry,* 105 Cal.App.2d 319, 322, 323 [232 P.2d 899]). Moreover, if in the opinion of appellant, the testimony of the informant would have aided his cause, he could have called him as a witness. He was well acquainted with the informant Dennis and at the time of trial it was brought out that the latter was then confined in the Los Angeles County Jail situated in the same building where the trial was being conducted, and could have been produced as a witness within a short time if subpoenaed.

It was not necessary that the prosecution call a corroborating witness to support the testimony of Officer Greene because this is not the type of case in which the law requires corroboration (*People* v. *Gebron,* 124 Cal.App.2d 675, 676 [268 P.2d 1068]; Code Civ. Proc., § 1844).

Next, appellant contends that the testimony of Officer Greene should have been disbelieved and that the former's testimony clearly established the defense of entrapment.

Under familiar rules it is now established law, many times reiterated by the appellate courts of this state, that the weight of the evidence or the credibility of witnesses will not be determined on appeal. Our consideration is limited to a determination of whether upon the face of the evidence it can justly be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. In other words, as was said in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]: " 'It must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . .We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury the opinion of the re-

viewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)'' and, as a necessary corollary to the rules above noted, the jury in this case were authorized, if they conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony which might have been contradictory to that of the witness, Officer Greene, and therefore, to disbelieve the testimony of appellant and accept that of Officer Greene as to the immediate circumstances surrounding the transaction here in question.

■ As to the issue of entrapment, our Supreme Court, in *People* v. *Nunn,* 46 Cal.2d 460, 471 [296 P.2d 813], had this to say:

"This court has held that where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime, raises no inference of unlawful entrapment. (*People* v. *Braddock,* 41 Cal.2d 794 at 802 [10] [264 P.2d 521].) ■ Also that entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that criminal intent to commit a particular offense originated in the mind of the accused. (*People* v. *Terry,* 44 Cal.2d 371 at 372 [2] [282 P.2d 19].)''

■ We are satisfied that in the instant case the jury was justified in finding from the evidence that the criminal intent originated in the mind of the accused. The testimony clearly shows that a police officer used an informer or undercover operator to secure evidence and simply provided an opportunity for appellant to commit the offense charged against him. This does not of itself constitute entrapment (*People* v. *Crawford,* 105 Cal.App.2d 530, 537 [234 P.2d 181]; *People* v. *Nunn, supra,* p. 471; *People* v. *Williams,* 146 Cal.App.2d 656, 660 [304 P.2d 100]).

Appellant relies upon the cases of *People* v. *Lindsey,* 91 Cal.App.2d 914 [205 P.2d 1114], and *People* v. *Crawford, supra,* but these cases simply reaffirm the doctrine that the defense of entrapment is available when it can be shown that the plan originated in the mind of the police officer, but is unavailing in cases where the officer merely afforded a suspect the opportunity of committing the crime. The third case cited by appellant (*People* v. *Gallagher,* 107 Cal.App. 425 [290 P. 504]) does not aid him. The reversal in that case was based on the ground that the court should have afforded the accused the benefit of an instruction on the law

of entrapment when the facts warranted such an instruction. The foregoing three cases are not here cogent or in point.

Appellant next contends that he was denied a fair trial because there was a delay in taking him before a magistrate. In that regard it is asserted that appellant was arrested on September 10, 1955, and he "was not taken before a magistrate until September 15, 1955, contrary to section 828 of the Penal Code (the duty of an officer executing a warrant." Since appellant concedes that he was eventually taken before a magistrate we do not regard the provisions of Penal Code, section 828, as applicable. █ Under the facts advanced by appellant we shall consider that his contention refers to a violation of the provisions of section 825 of the Penal Code which provides in part that, "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, including Sundays and holidays. . . ." Appellant's contention that he was held for five days before being taken before a magistrate finds no support or even mention in the record, and no complaint of any such delay was made in the trial court. Such a complaint may not be made for the first time on appeal (*People* v. *Watts*, 126 Cal.App.2d 659, 662 [272 P.2d 814]). █ Moreover, the violation of appellant's rights because of failure to observe the provisions of Penal Code, section 825, does not require a reversal unless there is a showing that such wrongful conduct resulted in an unfair trial. There is no such showing here. We are not here confronted with a case wherein an accused during the interim between his arrest and the claimed delay in bringing him before a magistrate, made any confessions, or that during such period anything occurred which militated against appellant at his trial. In these circumstances the violation of his constitutional and statutory rights immediately after his arrest cannot be said to have affected the outcome of his trial (*People* v. *Guarino*, 132 Cal.App.2d 554, 558 [282 P.2d 538]; *People* v. *Stroble*, 36 Cal.2d 615, 626 [226 P.2d 30]).

Finally, appellant asserts that, "The warrent was contrary to the Penal Code, sections 814, 815, 820 (see Clerk's Transcript, page 3, lines 12 to 16). If the record is true there never was a warrent issued, and we will presume the record is true." However, the aforesaid citation to the clerk's transcript shows, "Bench warrant issued." We fail to perceive the applicability of Penal Code, sections 814 and 815, which have to do only with the contents or form of a warrant

of arrest, and wherein it is required that the name of the accused be shown as well as the time of its issuance, the place where it is issued, and the name and title of the magistrate issuing the same. As to section 820 of the Penal Code, it has been repealed (Stats. 1935, p. 1526).

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1957.