[Crim. No. 8028. Second Dist., Div. Four. Oct. 10, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD R. HEAD et al., Defendants and Appellants.

*Assigned by Chairman of Judicial Council.

Donald R. Head, in pro. per., and David C. Marcus for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—The Los Angeles County Grand Jury returned a secret indictment on February 20, 1961, in which defendant Donald R. Head was charged in Count I with a violation of section 11501 of the Health and Safety Code, selling and furnishing a narcotic, heroin. Defendants Head, Ernest C. Madrano and Richard A. Padilla (John Doe ''Danny'') were charged in Count II with a violation of the same section, selling and furnishing a narcotic, heroin. The indictment was subsequently amended to show defendant Padilla's true name. The indictment was again amended to charge two prior felony convictions against defendant Head and was further amended to charge a prior misdemeanor narcotic conviction against Padilla.

Defendants pleaded not guilty. Trial was by the court, trial by jury having been duly waived by defendant and all counsel. Each defendant and all counsel waived trial by jury on the issue of the determination of truth or falsity of the priors as alleged in the indictment.

Defendant Head was found guilty as charged in Counts I and II.

Defendant Padilla was found guilty as charged in Count II. The court made no findings on the priors. Probation was denied as to each defendant. Motions for new trial were denied. ▇ Defendant Head was sentenced to state prison for the term prescribed by law on each count and, absent an order making them run consecutively, it will be presumed the court intended that they run concurrently. Defendant Padilla was sentenced to state prison for the term prescribed by law.

Defendant Head applied to this court for appointment of counsel to assist him on appeal. This court, having made an independent investigation of the record and having determined that it would be neither advantageous to defendant nor

helpful to this court to have counsel appointed, denied the application whereupon defendant prosecutes this appeal in propria persona. Defendant Head has filed, and the court has considered, both an opening and reply brief.

James R. Martin testified that he was an undercover officer for the narcotic division of the Los Angeles Police Department. At approximately 11 a. m. on January 19, 1961, he saw defendant Head walking down Broadway between 5th and 6th Streets in the City of Los Angeles. He called to defendant Head who got into his car. They picked up another person and they drove to 4th and Los Angeles Streets. Defendant Head said to the officer, "There's Johnny. Give me your bread." He gave defendant two $5.00 bills. Defendant got out of the officer's car and got into Johnny's car. Defendant told the officer to drive around the block twice and then pick him up. The officer followed these directions. Defendant re-entered the officer's car and stated: "Let's get out of here. Those guys are hot." The officer asked defendant, "Did you get the gram?" Defendant replied, "Yes, I tried to get it for $8 but he wouldn't go, so I gave him $20." The officer then asked for his half and the defendant removed a pink balloon from his mouth and handed it to the officer.

On the next day, January 20, 1961, Officer Martin was approached by defendant at 7th and Broadway and inquired of the officer "Have you seen anybody around?" The officer indicated that he had not. Defendant said "There should be somebody at the El Paso by now, so let's go up there." They drove to the El Paso, which is located at 3d and Hill Streets, Los Angeles, and made inquiry concerning the purchase of narcotics, but they could find no one selling. They drove to the Grand Central Market and were approached by codefendant Madrano (not appealing), and he inquired of them, "If you want to score, I'll make it for you." Defendant Head told the officer "Give me your money." The officer gave him two $5.00 bills and defendant passed some currency to codefendant Madrano. Madrano left the car and went into the Grand Central Market and approached defendant Padilla and gave him some currency. Defendant Padilla removed two red balloons from his mouth and gave them to Madrano and Madrano gave the balloons to the officer.

Defendant Head asked the officer, "Did you get the stuff?" The officer replied "Yes" and showed him the two red balloons. Defendant Head took one of the balloons from the officer's hand and codefendant Madrano told the officer and

defendant Head ''Come and fix with us.'' They refused. During this transaction the officer testified he was standing between 10 and 20 feet from defendant Padilla when the balloons and currency were passed between Madrano and defendant Padilla. He recognized Padilla from a prior narcotic transaction.

Defendants and all counsel stipulated that K. R. Druley was an expert forensic chemist employed by the police department; that he may have been deemed to have been called, sworn and testified that he made an examination of the two exhibits received in evidence; that each contained five capsules of white, powdery substance and that in his opinion the powdery substance in both of the exhibits was heroin. Defendant Padilla took the stand in his own behalf. He testified that he left Los Angeles by Greyhound bus on January 18, 1962, at approximately 8:30 p. m. for Mexico City. He went with one Cistos Monteyes; their first stop was Tijuana and from there they took another bus for Mexico City. He remained in Mexico about 30 days and returned to Los Angeles during the latter part of February 1961. Prior to leaving, he obtained a visa from the Mexican consul and was given some shots by the Health Department on January 18, 1961. He has never had a mole on his left cheek (one of the identification items mentioned by Officer Martin) or on his right cheek. He does have a little mole up by his eyebrow, close to the temple. He was not at the Grand Central Market on January 20, but was somewhere in Mexico at that time.

Albert E. Baker, senior communicable disease investigator of Los Angeles County Health Department testified he made a search of the county records to determine whether or not defendant Padilla had received an inoculation sometime during the month of January. He found a recorded certificate signed by one Richard Padilla who had received a smallpox immunization on January 31, 1961.

Defendant Padilla contends that the evidence of his identification was insufficient to sustain his conviction. This contention is without merit. The officer testified he was 10 to 20 feet away from defendant at the time of the narcotic transaction and he recognized him; he had had a prior narcotic transaction with defendant on January 13, 1961; he had seen him prior to his arrest with his wife and child and at the time of the arrest he was with his wife and child; he was positive of his identification.

''It was not necessary that the prosecution call a

corroborating witness to support the testimony of [the officer] because this is not the type of case in which the law requires corroboration [citations]." *(People* v. *McCrasky,* 149 Cal. App.2d 630, 635 [309 P.2d 115].)

As stated in *People* v. *Baserto,* 162 Cal.App.2d 123, 125 [327 P.2d 558], "Aside from the question of rejecting [the officer's] testimony, it is also true that the court was not required to accept the alibi testimony though not directly contradicted by another witness. In other words, the judge had the prerogative of disbelieving defendant and his witness. [Citations.]"

"The uncorroborated testimony of the officer is sufficient to sustain the implied finding as to defendant's identity. [Citations.]" *(People* v. *Shepherd,* 200 Cal.App.2d 306, 311 [19 Cal.Rptr. 234]; see also *People* v. *Smith,* 174 Cal.App.2d 129, 134 [344 P.2d 435].)

Defendant Padilla next contends that he was denied his right to a speedy trial pursuant to the United States Constitution and the California Constitution. This contention is also without merit. Defendant raises this contention for the first time on appeal. He comes too late. He waived any right he had to insist that he be tried at an earlier date when he failed to object at the time the cause was set for trial. Defendant not only did not raise an objection at the time the matter was called for trial but requested a continuance of the trial date.

"The right to a speedy trial is one which defendants can waive. [Citations.]" *(People* v. *Weiss,* 50 Cal.2d 535, 558 [327 P.2d 527].)

" 'When a defendant fails to object at the time a cause is set for trial beyond the statutory period, consent is presumed. [Citations.]' " *(People* v. *Contrerai,* 172 Cal.App. 2d 369, 371 [341 P.2d 849].)

Defendant Head contends he was entrapped into committing the crime as charged in Count I of the indictment. We find no merit in this contention. "Entrapment is an affirmative defense imposing upon the accused the burden of proving that he was induced to commit the crime of which he is charged, and the existence or nonexistence of entrapment is a question of fact for the trier of fact who is the sole judge of the weight and worth of the evidence. [Citation.]" *(People* v. *Castro,* 167 Cal.App.2d 332, 337 [334 P.2d 602].)

Defendant further urges in his brief that entrapment was shown as a matter of law.

■ "Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused. [Citation.]" (*People* v. *Terry,* 44 Cal.2d 371, 372 [282 P.2d 19].)

■ While we have reviewed the evidence at some length, we will discuss it briefly further. The officer with defendant and another person stalked a known narcotic dealer at this defendant's request; defendant apparently knew the narcotic dealer for he stated to the officer, "There's Johnny. Give me your bread." (Which in narcotic parlance means, "Give me your money.") The officer complied and gave him two $5.00 bills. Defendant got out of the car, later joined the officer and handed him a red balloon containing heroin. It is to be noted that defendant asked the officer for the money as soon as he saw the dealer. Here the evidence shows defendant was not reluctant in making the buy. A review of the record here shows there was substantial evidence to support the trial court's implied finding that the criminal intent originated not with the officer but with defendant. There was substantial evidence before the trial court and he drew a reasonable inference from the evidence that the undercover agent did not entrap defendant to buy the heroin.

A further review of the evidence in this matter would serve no useful purpose. We conclude the evidence was sufficient to justify the conviction on both Counts I and II and the defendant was not entrapped as a matter of law.

Judgments of conviction affirmed.

Burke, P. J., and Ford, J.,* concurred.

The petition of appellant Head for a hearing by the Supreme Court was denied December 5, 1962. White, J.,† participated therein.

---

*Assigned by Chairman of Judicial Council.

†Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.