[Crim. No. 277.   Fifth Dist.   Nov. 9, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH VALVERDE, JR., Defendant and Appellant.

Robert N. Chargin, Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.*—This is an appeal from a judgment after defendant was found guilty in a court trial of two counts of selling a narcotic, heroin, and purports to be an appeal from an order denying motion for a new trial.

The purported appeal from the order denying a motion for new trial is dismissed as no appeal lies from such order. (Pen. Code, § 1237; *People* v. *Lessard,* 58 Cal.2d 447 [25 Cal. Rptr. 78, 375 P.2d 46].)

The sole point urged on appeal is that the trial court erroneously imposed upon defendant the burden of proving the defense of entrapment by a preponderance of the evidence. When Munoz, a narcotics user, agreed to cooperate with the narcotics enforcement officials in January 1965, after having been told he was a suspected narcotics user, he agreed to make narcotics purchases for the officials; and after agreeing to so cooperate he stopped using narcotics. For some four months Munoz worked closely with narcotics officials and arranged for and made purchases from a number of narcotics peddlers. These peddlers were ones Munoz previously knew about or learned about himself. They were not persons he learned about from the officers, nor were they persons from whom the officers directed him to buy. In January 1965, Munoz was introduced to appellant by one Victor, a narcotics pusher known to Munoz. Thereafter, Munoz may have talked to appellant once but never telephoned him and the officers never questioned Munoz about appellant or asked him anything about appellant.

On January 31, 1965, appellant came to Munoz's home about 11 a.m. and asked him if he "wanted to score." Munoz said he would try to secure some money to make a purchase. Appellant gave Munoz some telephone numbers at which he could be reached. The informer then contacted an officer with whom he had been working and told him of appellant's approach. The officer met Munoz, searched him and gave him $20. Munoz called appellant, this being the first time he ever

*Assigned by the Chairman of the Judicial Council.

called, and told him he had $20 and would be waiting in a parking lot. Appellant arrived some 10 minutes later, sold Munoz two bindles of heroin from some 15 to 20 identical packages. Again, on February 3, 1965, Munoz called one of the several numbers given him by appellant and told the female who answered that he wanted to speak to appellant. She said he was away but would return shortly. Munoz said he would be down, and drove to appellant's cousin's house with a narcotics agent, arriving just as appellant and his cousin were leaving. Munoz told appellant he wanted some stuff—appellant motioned Munoz to follow him, and the two men drove behind appellant's car to a market. Munoz went into the market and attempted to introduce appellant to his ''brother,'' the narcotics agent, but appellant refused, saying he did not wish to meet anyone. When appellant came out of the market, Munoz told him he and his brother had money and wanted to buy some stuff. Appellant said to meet him back at his cousin's house. They followed him there and waited until appellant called and waved to them. Munoz went to appellant's car and bought four bindles with the $40 the agent had given him.

After the February 3d transaction Munoz admitted he tried several times to contact appellant in order to make further purchases but was unsuccessful, and that he was told not to call anymore. He testified these calls were made between 5 and 8 p.m. and never at 2, 3 or 4 a.m. Sometimes he pretended to be ill and in need of narcotics. A few times appellant told Munoz to stop calling him.

Appellant's defense was based upon testimony of several witnesses who testified that Munoz constantly called appellant prior to January 31 and February 3, telling him he wished to purchase narcotics. There was testimony that Munoz called from five to seven times a day, sometimes in the early morning hours, often pleading for narcotics and acting sick.

Appellant's mother testified that Munoz came to appellant's home between 3 and 4 a.m., pleading for appellant. Witnesses testified appellant would refuse the calls and asked the person answering the phone to say he was not home.

Appellant said he had never given Munoz his telephone number, but that a week after being introduced to him Munoz began to call, asking for narcotics. He said Munoz pleaded with him, saying he was sick. Being an ex-addict, appellant knew what withdrawal symptoms were like and was sympathetic to Munoz. At the time of both sales appellant said Munoz persuaded him to sell the narcotics and that appellant

told him it was the last time he would do Munoz a favor. Appellant testified that before both sales Munoz called him, pleading for narcotics, and that he agreed to get them and did obtain the narcotics from one Virginia Ramirez.

At the time of trial, defense counsel urged that the burden of appellant to prove entrapment was only to introduce sufficient evidence to raise a reasonable doubt. However, at the time of trial and subsequently on the motion for a new trial, the trial court indicated that it felt the defendant did not carry the burden of persuasion by a preponderance of the evidence as to the existence of the entrapment, stating in a memorandum decision ruling on the motion for a new trial, "the defendant's guilt of the narcotics sale was clear but he introduced substantial evidence in re entrapment." The trial court found that defendant did not carry the burden of persuasion by a preponderance of the evidence as to the existence of entrapment, and convicted him.

Counsel for defendant moved for a new trial on the ground "that the defendant should have had only the burden of producing sufficient evidence of entrapment to raise a reasonable doubt that it existed (and thus a reasonable doubt as to his guilt) and that requiring more of him was unconstitutional."

This is a case where if the trial court's view of the burden of proof was wrong the memorandum opinion can be used to show that a different result would obtain under the correct view. (See *People* v. *Van Gorden*, 226 Cal.App.2d 634, 638 [38 Cal.Rptr. 265]; *Ehrenreich* v. *Shelton*, 213 Cal.App.2d 376, 378-379 [28 Cal.Rptr. 855].)

Much has been written relative to the definitions of the terms used relative to the burden of "going forward," which merely means the burden of producing evidence on an issue sufficient to avoid "a peremptory finding against him on a material issue of fact," (Witkin, Cal. Evidence (1958) § 54, p. 71.). In this case it would mean that amount of evidence a defendant must produce to show reasonable doubt in the cases where a defendant has the "burden of going forward."

The term "burden of persuasion" means the burden of making the trier of the fact believe the facts asserted by a party. This burden is commonly referred to as the "burden of proof by a preponderance of the evidence." (Witkin, *supra*, § 53, p. 71; § 59, p. 77.) The trial court here determined that due to the nature of the entrapment offense the law placed

upon defendant the burden of persuasion that entrapment existed, that is, that the original intent to commit the criminal violation originated with the law enforcement officials.

Appellant's basic argument centers around the rule embodied in Penal Code section 1096—that the prosecution is required to prove beyond a reasonable doubt every element necessary for a conviction. Section 1096 required the prosecution to prove a defendant's *guilt* beyond a reasonable doubt; appellant asserts that when the defense of entrapment is interposed and a sufficient showing is made to raise a reasonable doubt, the burden then shifts to the prosecution to prove nonentrapment beyond such doubt. This position is grounded on an argument that nonentrapment becomes a necessary element of proof of a defendant's guilt and that absent such proof an entrapped defendant is not guilty in the classical sense. In attempting to support this contention, defendant relies upon *Sorrells* v. *United States,* 287 U.S. 435 [77 L.Ed. 413, 53 S.Ct. 210, 86 A.L.R. 249] ; and *Sherman* v. *United States,* 356 U.S. 369 [2 L.Ed.2d 848, 78 S.Ct. 819], for the proposition that an entrapped defendant is "not guilty," imputing to the Legislature an intent not to convict such defendant. This is the majority opinion in each of these cases. The minority takes the position in each case that the defense of entrapment "attributes no merit to the defendant," but is a policy measure whereby the court refuses to punish an entrapped defendant in order to protect "the purity of its own temple." In *Sorrells* the majority indicates that the defense cannot be based on policy because the court cannot excuse the acts of a defendant who has committed the statutory elements of the crime. This position is supported in other authorities. (73 Harv. L.Rev. 1333; 9 So.Cal.L.Rev. 29.) The *Sorrells* minority supports respondent's position that the entrapped defendant is just as guilty as one induced to commit a crime by a third party instead of an officer, but only in the latter case is defendant acquitted. This view requires, says the minority, that this is a policy defense. This view is also supported by other authorities. (2 So.Cal.L.Rev. 283, 305; 8 So.Cal.L.Rev. 245 ; 23 Cal.L.Rev. 438.)

Although appellant's position is succinctly set forth in his argument before this court, it does not appear to be the view of the California Supreme Court, which has rejected the notion that entrapment goes to the question of guilt or innocence.

In *People* v. *Benford,* 53 Cal.2d 1, 8-10 [345 P.2d 928], it is

said: "The theoretical basis of the defense, according to the United States Supreme Court, is that 'Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations.' [Citation.] In California recognition of the defense is said to rest upon the broadly stated grounds of 'sound public policy' and 'good morals.' [Citations.] The precise nature of this public policy has not been spelled out in any California majority opinion concerning entrapment, but obviously California has recognized the defense for reasons substantially similar to those which caused this court [citations] to adopt the rule that evidence obtained in violation of constitutional guaranties is not admissible; i.e., out of regard for its own dignity, and in the exercise of its power and the performance of its duty to formulate and apply proper standards for judicial enforcement of the criminal law, the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime. [Citations.] Although there is an instinctive sympathy for the originally well-intended defendant who is seduced into crime by persuasion and artifice, such a defendant is just as guilty where his seducer is a police officer as he would be if he were persuaded by a hardened criminal accomplice. Entrapment is a defense not because the defendant is innocent but because, as stated by Justice Holmes [citation], 'it is a less evil that some criminals should escape than that the Government should play an ignoble part.' [Citation.]

"Nevertheless, the tests and definitions of entrapment stated by the California courts, like those stated by the United States Supreme Court, place at least as much emphasis on the susceptibility of the defendant as on the propriety of the methods of the police. Thus, common California formulations of the doctrine of entrapment state that the availability of the defense depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer [citations], and that where a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment [citations]. Similarly, the United States Supreme Court says that the defense is available 'when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute,' but 'the fact that government agents "merely

afford opportunities or facilities for the commission of the offense does not'' constitute entrapment.' ''

*People* v. *Perez,* 62 Cal.2d 769 [44 Cal.Rptr. 326, 401 P.2d 934], reenunciates the same policies and tests. However, this case is not conclusive as to the burden of proof question, and there appears to be divergence among the authorities as to what is the proper view of the burden of proof required of a defendant to establish entrapment.

In a number of situations for reasons of policy or convenience, the burden of proof by a preponderance of the evidence is placed on the defendant. The situations involve special defenses which are not elements of the crime and which therefore need not be negatived in the accusatory pleading; among these is entrapment. (See *People* v. *Terry* (1955) 44 Cal.2d 371, 372 [282 P.2d 19] ; 73 Harv.L.Rev. 1344, 1345; 1 Witkin, Cal. Crimes, § 178.)

Witkin, California Crimes (1963) section 178 at page 170 states: ''. . . there is little authority in point, [but] it seems both reasonable and practical to bring the special defense of entrapment within that class; and this seems to be the California rule.''

The article in 73 Harvard Law Review 1333, does not add precise support to the conclusion reached in the above work since the author there says at page 1344: ''The allocation of burden . . . is that the defendant be required to plead and prove the improper invitation to criminal activity; and the prosecution be required to prove by a preponderance of the evidence a continuing course of unpunished criminal activity if that would furnish an avoidance of the defense under the facts alleged.''

In 73 Harvard Law Review 1344, footnote 67, the author characterizes the proposed rule in the model penal code, requiring a person prosecuted for an offense to prove by a preponderance of the evidence that his conduct occurred in response to an entrapment, as ''unduly harsh.'' An examination of the federal cases on the matter reveals more than considerable confusion. There is no general trend which is of any assistance in determining the matter now before the court. The case of *People* v. *Chavez,* 184 Cal.App.2d 741, 743-744 [7 Cal.Rptr. 729], states the California view as follows: ''Appellant asserts error in the instruction that 'entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial.' But this statement of the law has often been

asserted. [Citations.] In some situations, a particular form of entrapment may negate or eliminate an essential element of the crime charged (see 14 Cal.Jur.2d, Criminal Law, § 209). In such case, of course, this instruction would be erroneous because it would relieve the prosecution of its burden of proving the crime beyond a reasonable doubt. Here, however, no such situation is presented. If the evidence of entrapment be viewed in the light most favorable to appellant, it contains nothing going to the elements of the crime. The record cannot be construed to negate appellant's intent to make the several sales here charged. At most, it shows that this intent was induced by acts of law enforcement officers. In the strict sense in which entrapment is here asserted, it is a defense 'not because the defendant is innocent but because . . . "it is a less evil that some criminals should escape than that the Government should play an ignoble part." ' [Citation.] Thus the instruction was proper in this case, and did not relieve the prosecution of its prescribed burden of proof.''

*Chavez* does not discuss the difference between the burdens therein referred to, and it is not clear what the court means when it asserts that the defendant has the ''burden of *showing*'' entrapment. However, a fair reading of this language persuades that it means the defendant has the burden of persuasion or the burden of proof by a preponderance of the evidence.

The language ''burden of showing'' is found in *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003] ; *People* v. *Grijalva,* 48 Cal.App.2d 690, 694 [121 P.2d 32] ; *People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024] ; and in *People* v. *Braddock,* 41 Cal.2d 794, 803 [264 P.2d 521], where it is said: ''Entrapment 'is a positive defense ·imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial' [citations]. Where the record shows a conflict in the evidence, the judgment will be reversed. [Citations.] ''

We find no case that expressly states the defendant has the burden of proof by a preponderance of the evidence, but the repeated statements referring to an affirmative defense indicate that this is the fair inference to be drawn from the language in many cases. (See *People* v. *Gutierrez,* 128 Cal.App. 2d 387, 390 [275 P.2d 65] ; *People* v. *Castro,* 167 Cal.App.2d 332, 337 [334 P.2d 62] ; *People* v. *Head,* 208 Cal.App.2d 360, 365 [25 Cal.Rptr. 124] ; *People* v. *Hawkins,* 210 Cal.App.2d 669, 671 [27 Cal.Rptr. 144] ; *People* v. *Harris,* 213 Cal.App.2d

365, 368 [28 Cal.Rptr. 766].) Although many of these cases have been overruled or modified by the decision in *Perez,* the language used relative to the nature of the defense still retains its validity.

The judgment appealed from is affirmed.

Conley, P. J., concurred.

STONE, J.—I dissent. As I view the majority opinion, it would have the effect of establishing two separate burdens of proof in entrapment cases. As to the prosecution's case, the jury must be instructed to apply Penal Code section 1096 except for the defense of entrapment, which it must weigh according to the preponderance of the evidence rule.

The majority cite cases and treatises which say it is logical to apply the preponderance of evidence rule to defendant's affirmative defense of entrapment. Logical or not, the language of Penal Code section 1096 leaves no room for this distinction. Moreover, logical consistency in every instance is not a *sine qua non* in the application of a statute.

The language of section 1096 is clear and unequivocal, and its application to anything less than "the entire comparison and consideration of all the evidence" does violence to the statute.

If all a jury had before it on the issue of entrapment was the word of an informer against the word of a defendant, the evidence might well be evenly balanced as to entrapment, yet raise a reasonable doubt in the minds of the jurors. Penal Code section 1096 gives the defendant the benefit of this doubt.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1967. Peters, J., was of the opinion that the petition should be granted.